WILLIAM WILLS, Respondent, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., Appellants.

Kansas City Court of Appeals, October 5, 1908.

1. RAILROADS: Street and Steam: Crossing Collision: Passenger Carriers: Evidence: Ordinance. When a passenger proves his right of carriage and his injury by a collision he makes a prima-facie case and the attempt to bolster up his case by an ordinance which was improperly admitted in evidence, does not in the case under judgment, effect the rule.

2. ————: ————: ————: ————: ————: Care: Negligence. A carrier of passengers must exercise the highest degree of care for their safety, and the negligence of a third party will not excuse the exercise of such care unless such negligence is the sole cause of the collision and the resulting injury.

3. ————: ————: ————: ————: Care: Lessee: Master and Servant. A steam railroad leasing the tracks of another road is only required to use ordinary care as to passengers on a street car crossing the lessor's tracks, and is not liable for the negligence of the lessor's servants in giving signals and closing the gates at crossings; and an instruction is condemned.

4. ————: ————: ————: ————: Statute: City Charter: Common Law. Section 1180, Revised Statutes 1899, does not apply to street railways in Kansas City, at crossings of steam railroads, since the charter gives the city exclusive control of its streets and the running of public conveyances thereon; but the common law remains in force and requires the street car company, as a carrier of passengers, to exercise the highest degree of care for their safety such as stopping and looking before crossing, if necessary.

5. ————: ————: ————: ————: Speed Ordinance: Negligence. Though a steam railroad is not liable to a passenger on a street car for the failure of its lessor's servants to give signals and close gates, yet it is liable if it passed over such tracks at a speed exceeding the maximum allowed by ordinance, and that is a question for the jury.

6. NEGLIGENCE: Pleading: Joinder of Causes of Action: Statute: Common Law. Though actions under the statute and at common law should not be joined in the same count, yet it is too late to raise such fault by objection to the introduction of evidence at the trial.

133 App—40

Appeal from Jackson Circuit Court.—*Hon. John G. Park,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*Thos. R. Morrow, Cyrus Crane* and *James P. Gilmore* for appellant, A., T. & S. F. Ry. Co.

(1) The objection to the introduction of any evidence under the petition ought to have been sustained. The petition was not a good pleading. McHugh v. Transit Co., 190 Mo. 85; Clancy v. Transit Co., 91 S. W. 509; Kendrick v. Railroad, 81 Mo. 521; 1 Ency. Pleading & Practice, 569; Hansberger v. Railroad, 43 Mo. 199; Gregory v. Railroad, 20 Mo. App. 448; Holliday v. Jackson, 21 Mo. App. 666; Mo. L. & M. Co. v. Zeitinger, 45 Mo. 123. (2) The court erred in holding that the Santa Fe Company was liable for the negligence of the Belt Company's watchman and in permitting in plaintiff's instruction a recovery on this ground. R. S. 1899, sec. 1060; Graven v. Railroad, 100 Mo. App. 617. (3) The demurrer of this defendant to the evidence ought to have been sustained: Authorities supra; Sites v. Knott, 96 S. W. 206. (4) Section 1180, Revised Statutes 1899, applies to this case, and the court erred in refusing this defendant's instruction No. A-3, based on that statute. 22 Am. & Eng. Ency. Law (2 Ed.), 933; Bluedorn v. Railroad, 108 Mo. 444; People v. Railroad, 79 Mich. 471, 44 N. W. 934; St. Louis v. Meyer, 185 Mo. 583; 15 Am. & Eng. Ency. of Law (2 Ed.), 295; Constitution of Mo. sec. 16, article IX.; Charter of Kansas City, subd. 31, sec. 1, art. III.; Moberly v. Hoover, 93 Mo. App. 663; State ex rel. v. Police Comm., 184 Mo. 109; State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. Railroad, 117 Mo. 11; Ewing v. Hoblitzelle, 85 Mo. 64; Kansas City v. Hallett, 59 Mo. App. 160; Railroad v. Murray, 42 N. E. 596.

*John H. Lucas, Ben. T. Hardin* and *Ben F. White* for appellant, Metropolitan Street Railway Company.

(1.) The court erred in permitting the introduction of the so-called "Peace Agreement." If it was erroneous it was harmful. Bindbeutal v. Railroad, 43 Mo. App. 469; Suttie v. Aloe, 39 Mo. App. 38; Clark v. Fairley, 30 Mo. App. 335; Walton v. Railroad, 40 Mo. App. 544; Prior v. Railroad, 85 Mo. App. 373; Railway v. O'Riley, 158 U. S. 334. (2) The court erred in giving, at the request of the defendant Santa Fe Railroad Company, instruction 8D. Judd v. Wabash, 23 Mo. App. 56; Barr v. Kansas City, 105 Mo. 559. (3) The court erred in refusing to give, at the request of defendant Metropolitan Street Railway Company, instruction numbered B11. This defendant was not required to keep a watchman at that crossing, and the instruction should have been given.

*Boyle, Guthrie & Smith,* for respondent, filed argument.

BROADDUS, P. J.—The plaintiff seeks to recover damages for an injury he received while a passenger on the Metropolitan Street Railway, which he alleges was the result of the negligence of the defendants. The Metropolitan Street Railway Company is a corporation operating a street railway in Kansas City, Missouri, and the Atchison, Topeka & Santa Fe Railroad Company operates a steam railroad between different points and passes through said city. For the purpose of convenience, we will call the former the Metropolitan Company and the latter the Santa Fe Company.

On August 6, 1904, the plaintiff was a passenger on one of the cars of the Metropolitan Company. At a crossing of Fifteenth street at what was known as the Belt Line crossing, the car collided with a train of the Santa Fe Company which was being operated over what was known as the Belt Line Railroad tracks. The plain-

tiff recovered judgment against both defendants, from which each appealed.

For a proper understanding, it is necessary to state the issue presented by the pleadings. The charge of negligence is as follows: "Plaintiff says that the defendants so negligently constructed, maintained and operated their lines of railroad, equipment, tracks and the cars and trains running thereon that, to-wit, August 6, 1904, about 10:30 a. m., while plaintiff was a passenger on one of the cars of the defendant Metropolitan Street Railway Company, having paid the usual fare for such passage, a train of the defendant, the Atchison, Topeka & Santa Fe Railway, was caused or permitted by said defendants and each of them to come in collision with the car on which plaintiff was a passenger, at said crossing on Fifteenth street between Indiana avenue and Cleveland avenue."

In addition to this general charge of negligence against both parties, plaintiff alleges specifically against the Santa Fe Company, that it was guilty of negligence in violating a certain ordinance of the city prohibiting the operation of steam railroads at grade over the streets of the city at a rate of speed greater than six miles per hour. And further, that the Santa Fe Company in conjunction with its codefendant and others, employed and maintained a watchman, who on the day of this collision was sick and not competent to perform the duties of his position, as was known, or by the exercise of due care ought to have been known, to the Santa Fe Company; that the latter (in conjunction with its codefendant and others) maintained at said crossing, gates, which it was the duty of the watchman to lower when a train was approaching on its track, so as to notify persons using Fifteenth street near said railroad crossing that a train was about to pass over said Fifteenth street on the steam railroad's tracks; that, as said train approached the said crossing from the north

to the east it was the duty of said watchman to lower said gates and to warn persons upon said street and persons operating the cars on its codefendant's tracks of the approach of said train; but on account of the negligence, sickness and incompetence of said watchman said gates were not lowered and no sufficient warning was given by said watchman; that the persons in charge of the train of the Santa Fe Company saw said gates were not lowered, or by the exercise of due care ought to have seen that they were not lowered, but said persons so in charge of said train negligently failed and refused to slacken the speed of said train and continued to run at a rate of speed in excess of six miles an hour over said crossing, though they knew, or by the exercise of due care ought to have known, that a failure to slacken such speed would probably cause injury to persons using said crossing; and that if such speed had been slackened, said collision could, by the exercise of due care, have been avoided. That said Santa Fe Company negligently failed to keep a proper lookout as said train ran toward and across said crossing; that if a proper lookout had been maintained, the position of peril of said street car could have been seen in time to have prevented said collision by the exercise of due care. And there is an allegation that said company was negligent in failing to ring its bell or sound its whistle.

There was a drawing introduced in evidence showing the immediate surroundings at the crossing, which it is unnecessary to incorporate in this opinion, as the plaintiff has made a statement fully explaining the situation which is not controverted, and is as follows: "The double tracks of the Steam Railway Company (Santa Fe) run in a northeasterly and southwesterly direction across Fifteenth street. The double tracks of the Street Railway Company (Metropolitan) run east and west along Fifteenth street. Fifteenth street at this point is one hundred feet wide, and the space from the north

street railway track to the north line of Fifteenth street is about forty-two feet. Along the north line of Fifteenth street a picket fence ran down to a point about seventy feet east of the Steam Railway Company's track. This fence ran north about thirteen or fourteen feet, thence northeast about thirty feet, thence north about twenty feet, across a switch track, the fence at this point consisting largely of a gate across said switch track. The switch track at this point was about forty-five feet north of the north line of Fifteenth street. The fence then turned in a northeasterly direction, substantially paralleling the main line of the steam railway, about eight or nine feet distant therefrom, the distance increasing as the fence continued its northeasterly direction. West of this fence there was nothing to obstruct the view. It was claimed by the Metropolitan, and that is undoubtedly the fact, that there was a string of box cars on this side track, which was about even with the gate across the track. These cars came within ten or twenty or twenty-five feet of the easterly main line tracks. The fence in question was a picket fence about half as high as a car. Assuming the facts in their strongest force in favor of the defendants, and assuming that the box cars on the side track were even with the gateway across that track, and constituted an obstruction to vision, it follows as a mathematical fact that when the street car was one hundred and fifty feet east of the point where a collision was possible with a train on the west track of the steam railway, the steam railway track was visible one hundred and ninety feet northeast of said danger point. When the street car was one hundred feet east of the danger point the steam railway track was visible two hundred and eight-five feet northeast of the danger point. When the car came within fifty feet of the danger point the steam railway track was visible five hundred and ten feet northeast of the danger point. When the street car came within thirty

feet of the danger point the range of vision paralleled the tracks of the steam railway company, and a train could be seen on those tracks one thousand feet away. Of course the crew on the steam train had the same opportunity to see the street car that the crew on the street car had to see the steam train."

The plaintiff proved that he was a passenger of the street railway company and that he was injured by the collision, and to further maintain his case against the Metropolitan Company introduced a certain ordinance which he claims required that company to maintain a watchman at the crossing in controversy. It was approved July 28, 1902, and accepted by the company on the same day. It appears to have been in the nature of a contract. Section 11 of said ordinance reads as follows: "At all points where said street railway tracks cross the tracks of any steam railway company, watchman shall be constantly stationed and kept to perform such duties as may be prescribed by ordinance; but the city shall pass necessary ordinances requiring the steam railway companies to join in the performance of this duty, and in the payment for the service; but if said railway companies fail to comply with the terms of such ordinances, then the street railway company shall station such watchman as aforesaid. Watchman shall be placed by the street railway companies at all points where their lines of track intersect, cross or form a junction and at dangerous curves between the Missouri river and Thirteenth street and between McGee street and Wyandotte street, and at such other points within the city as may be required by a reasonable ordinance. It is understood by this that the company recedes from its position that the conductors or gripmen can act as flagmen or watchmen. The street railway company shall stop its cars for the purpose of taking on and letting off passengers before it shall cross a street or intersecting line. The city reserves the right to regulate and control

by reasonable ordinance all the matters mentioned in this section."

The Metropolitan Company objected to the introduction of said ordinance on the ground that it was incomplete and that in order to make it operative the city was required by other ordinances, of which there was no proof, to prescribe the duties of the watchmen provided for. It is not denied but what the Metropolitan Company was obligated to keep a watchman, but the purpose for which he is to be kept is not prescribed —his duties are not defined. A watchman without any prescribed duties would be of no utility whatever. In the absence of the provision requiring that the city should by ordinance prescribe his duties, the court might, as a matter of law, assume that they were such as are usually rendered in such cases by watchmen. But, as they were to be prescribed by the city, the court was not authorized to make such an assumption. It follows that the admission of said evidence was error, and the Metropolitan Company claims that it was harmful. But we cannot see in what manner it was harmful. It was not necessary to plaintiff's case. When he had proved that he was a passenger and that he was injured by a collision, he had made his prima-facie case. He had done all that the law required of him. This evidence did not in any way strengthen his position. It had already been assured. It was a futile attempt to improve that which was already complete.

The Metropolitan Company, in order to avoid liability, introduced evidence tending to show that the collision was the result of the negligence of the Santa Fe Company, its codefendants. The evidence tended to show that the latter company was negligent in running its trains at a rate of speed in excess of six miles per hour; that the collision would not have occurred if the speed had been within the rate fixed by the ordinance, as it was shown that the street railway car had nearly

passed over the Belt Line tracks when it was struck on the rear end by the locomotive, and the Santa Fe Company was negligent in not slackening the speed of its train or stopping it altogether when its engineer and fireman saw or might have seen by looking, that the gates guarding the approach were not closed as was the usual custom. The fact, however, that the Santa Fe Company's agents were negligent in the respects mentioned, did not excuse the Metropolitan Company from liability unless such negligence was the sole cause of the collision. In order to exonerate itself from the liability created by the prima-facie case made by the plaintiff, the latter company was required to show that it exercised the highest degree of care to prevent such collision. The evidence in the case shows that when its cars arrived within thirty feet of the Belt Line crossing its motorman and conductor could have seen the Santa Fe Company's train rapidly approaching at a distance of at least several hundred feet away, but, notwithstanding, they moved the car onto the said tracks where it was struck by an approaching train. However, if it had been the duty of the Santa Fe Company to have kept a guard at the crossing and to have had the gates lowered for its approaching train, it was still the duty of the Metropolitan Company's operators on approaching the crossing, to have used the highest degree of care to secure the safety of its passengers. Ordinarily a person approaching said crossing seeing that the gates were not closed, would be justified in assuming that it would be safe to cross, on the theory that he was only required to use ordinary care. But a higher duty was imposed upon the Metropolitan Company. The operators of its cars should, under similar conditions, have used their senses. They should have looked for approaching trains. There is no doctrine better settled than that a carrier of passengers must exercise the highest degree of care for their safety.

The Santa Fe Company, in the operation of its trains, in so far as any duty it owed to plaintiff who was not its passenger was concerned, was only required to use reasonable or ordinary care. This company's position is that, as it was operating its trains over the Belt Line Company's tracks under a lease, and, as the watchman at the crossing was in the employ and sole control of the latter company, it was not liable for any dereliction of duty on his part in failing to shut down the gates or give the necessary warning of danger. Such is the law. "While servants are under the control and order of strangers the master cannot be held for negligence. Such authority to control is the test of liability." [Garven v. Railway, 100 Mo. App. 617.]

Instruction four, given for plaintiff, authorized the jury to return a verdict against the Santa Fe Company, if the jury found that it negligently failed to lower the gates at said crossing. This was error for the reason as stated, that the person in charge of said gates was not in the employ and under the control of the Santa Fe Company, but was the servant and under the control of the Belt Line Company.

It is contended by the Santa Fe Company that its codefendant was under obligation to bring its car to a full stop at least ten and not more than twenty feet before reaching the tracks in question, and that it was the duty of its conductor, or some other of its employees, to have gone forward to said tracks for the purpose of ascertaining whether a train was approaching said crossing, as provided by section 1180, Revised Statutes 1899. We think not. Under what is known as the "Enabling Act," Kansas City had exclusive control over its public streets, avenues, alleys and public places, and had exclusive power by ordinance, to vacate or abandon any public highway, street, avenue, alley or public place, or part thereof, "any law of this State to the contrary notwithstanding." This was a delegation to the city by the Leg-

islature of the exclusive control of its streets. In Kerney v. Barber Asphalt Paving Co., 86 Mo. App. 573, it was so held. In State of Missouri v. Kessells, 120 Mo. App. 233, a similar question was under consideration. The Legislature had granted to the city of St. Joseph "exclusive power to restrain, regulate, license, tax or suppress dramshops." The defendant was indicted, tried and convicted for a violation of the general law for keeping open his dramshop and selling intoxicating liquors therein on Sunday. This court held that he was not amenable under the general law, as the exclusive power over the subject had been granted to the city. In that case the question was exhaustively argued and the authorities reviewed, and in so far as this court is concerned, the question is settled. While such duty was not imposed by a statute, a similar duty existed at common law, as has already been stated viz: the exercise of the highest degree of care for the safety of passengers.

The Metropolitan Company insists that, as the case was tried upon the theory that said section regulated and prescribed its duties, it was greatly prejudiced thereby. It was the creation of a false issue. But we cannot see how it could have been prejudicial. It was not necessary to plaintiff's case. The Metropolitan Company most signally failed to show that it exercised that high degree of care that the law imposed upon it for the protection of its passengers. Although there was no ordinance in force requiring it to proceed with caution to cross the Belt Line tracks, the law, as we have seen, imposed that duty. Its principal attempt at exoneration was to show that the Santa Fe Company was guilty of negligence. But the failure of that company to use reasonable care was no justification for the Metropolitan's failure to exercise the highest degree of care. What might excuse the former would not necessarily exculpate the latter.

The Metropolitan Company was afforded many ad-

vantages it was not entitled to at the hands of the court. By instructions 13 and 14, given in its behalf, the case was allowed to go to the jury on the theory that if the collision was an accident, it was not liable, when under the facts in the case there was no question of accident. While in its instruction 9 the burden of proof was placed upon the plaintiff throughout the trial to establish the charge of negligence, when in fact the burden was shifted to defendant to exculpate itself after he had made his prima-facie case.

Notwithstanding the Santa Fe Company was not liable for the negligence of the Belt Line Company for the failure of its watchman to close said gates at the time mentioned, yet it was liable if it passed over said tracks at a rate of speed exceeding six miles an hour, or failed to give the necessary warning of its approach, and whether it did so was a question for the jury under the evidence.

The Santa Fe Company insists that the plaintiff's petition is fatally defective in that it combines in one and the same count a common law cause of action and an action for the violation of a city ordinance. The law is that two such causes of action cannot be joined in the same count in a petition. [McHugh v. Transit Co., 190 Mo. 85.] But this defect in the petition was such that the defendant should have taken advantage of it by motion or demurrer. The objection was made upon the introduction of evidence. The courts look with disfavor on such a course of practice, and we think it should not be regarded at this late date.

For the error in the instruction noted, the cause is reversed and remanded as to the Santa Fe Company. As to the Metropolitan Company, the cause is affirmed. All concur.