AGITA NICASTRO CUCCIO, Respondent, v. TERMINAL RAILROAD ASSOCIATION, a corporation, and EDWARD B. PRIOR, Receiver of the WABASH RAILROAD COMPANY, a corporation, Appellants.

St. Louis Court of Appeals.   Opinion Filed May 7, 1918.

1. RAILROADS: Collision: Street Railroads: Push Car: Construction of Statute. A push car without any mechanical apparatus for its propulsion, and primarily intended to convey tools and kindred paraphernalia used by the workmen, yet not intended to be used for conveying them, does not fall without the intendment of Rev. St. of Mo. 1909, section 3303, requiring each car on a street railroad track to be brought to a full stop before reaching railroad tracks, and making it the duty of some employee to go forward and ascertain whether a train was approaching.

2. ————: ————: ————: Negligence: Contributory Negligence: Question for the Jury. Where deceased, a street railway track repairer, who, on orders from his foreman, placed his tools on such push car and with others rode thereon down a considerable grade, at the foot of which were several railroad tracks, which were guarded by a watch tower, gong and gates and a watchman was posted at the time in the tower, whose duty it was to ring the gong and lower the gates upon the approach of a train, and the evidence shows that the gates were left open, and the gong on the tower was not rung, and that deceased, before going on to the push car, at a distance of more than a block away, looked and saw no train in sight and found the gates open, and that the gates remained open up to the time the tender of a backing locomotive struck the push car on the crossing, and that the bell on the engine was not rung and no whistle blown, nor was any man stationed on the tender, as required by the rules, etc., held that the deceased could not be guilty of contributory negligence as a matter of law, and that the court properly held that the plaintiff had made out a prima facie case.

3. NEGLIGENCE: Contributory Negligence: Prima-facie Case: Question for the Jury. In such a case the burden then shifts to the defendants, if they rely upon the plaintiff's negligence, to disprove or overcome that case to the satisfaction of the jury; such prima-facie case having been made out, the case can never be peremptorily taken from the jury; for, however strong the controverting testimony of plaintiff's contributory negligence may be, its credibility and weight are for the jury.

4. **RAILROADS: Collision: Street Railroads: Negligence: Question for the Jury.** Where a terminal railroad locomotive was delivering cars to a through road, and, returning, backed across a grade street railroad crossing, although the watchman in the tower was not its employee, nor were the tracks upon which the collision occurred, nor the gates erected thereon, owned or operated by it, yet such defendant may be found liable if it passed over said street railway tracks and failed to give the necessary warning of its approach; and under the record in this case its liability *vel non* was properly held to be a question for the jury.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Wells H. Blodgett, George B. Webster, Henry W. Blodgett* and *Walter N. Fisher* for appellant; *Edward B. Pryor,* Receiver.

(1) The deceased was guilty of such contributory negligence as a matter of law that the plaintiff was not entitled to recover. Wilds v. Railroad, 24 N. Y. 430; Coyle v. Railroad, 77 N. H. 604; L. S. & M. S. Ry. v. Franz, 127 Pa. St. 279; Lenix v. Railroad, 76 Mo. 86; Stepp v. C. R. I. & P. Ry., 87 Mo. 229; York v. K. C, C. & S. Ry., 117 Mo. 405; Mockowik v. Railroad, 196 Mo. 550; Miller v. Railroad, 4 Fed. 768. The rule that the negligence of the plaintiff which contributes to the cause of the injury will prevent a recovery is without exception or qualification. Hogan v. Citizens' Ry. Co., 150 Mo. 55. (2) It was error to submit the question of the deceased's contributory negligence to the jury, because there was no dispute about the facts. He either was or was not guilty of contributory negligence as a matter of law and the court should have so declared. Powell v. Railroad, 76 Mo. 80; Lenix v. Railroad, 76 Mo. 86; Davies v. Railroad, 159 Mo. 1; Mockowik v. Railroad, 196 Mo. 550; Fowler v. Randall, 99 Mo. App. 407. (3) The plaintiff's instruction on the measure of damages, No. 4, is erroneous and prejudicial, because it authorized the jury to

take into consideration the support which she would have received from her husband during the remainder of his lifetime when there was no evidence of the probable duration of his life.

*T. M. Pierce, J. L. Howell* and *W. M. Hezel* for appellant, Terminal Railroad Association of St. Louis.

(1) The court erred in refusing to give the instruction in the nature of the demurrer to the evidence as requested by the defendant, Terminal Railroad Association of St. Louis, at the close of the plaintiff's case in chief and erred in refusing to give a similar instruction requested by that defendant at the close of the whole case. (a) Because plaintiff's testimony and all the testimony shows that the push car was not stopped not less than ten feet nor more than twenty feet from the crossing of the Wabash tracks and the street railway tracks as required by law. Sec. 3303, R. S. 1909; Boyd v. Railroad, 249 Mo. 111; Clark v. Railroad, 242 Mo. 570, 599; Mulderig v. Railroad, 116 Mo. App. 655. (b) Because irrespective of Sec. 3303, R. S. 1909, the decedent was guilty of contributory negligence as a matter of law. Willis v. Railway, 133 Mo. App. 625; Miller v. U. P. R. Co., 4 Fed. 768, l. c, 769; York v. K. C. C. & S. Ry. Co., 117 Mo. 405; Osborn v. Railroad, 179 Mo. App. 245; Burnett v. Railroad, 172 Mo. App. 51; Lann v. Railroad, 216 Mo. 563, 578; Newton v. Railroad, 152 Mo. App. 167, 172; Walker v. Railroad, 193 Mo. 453, 479; Stotler v. R. R., 204 Mo. 619, 638; Dey v. United Railways, 140 Mo. App. 463; Burge v. Railroad, 240 Mo. 76. (c) Because the humanitarian doctrine was not available to the plaintiff as the necessary elements were neither pleaded nor proven. Keele v. Railroad, 258 Mo. 62, 79. (2) The court erred in giving to the jury plaintiff's instruction No. 2, as follows: "The court instructs the jury that if they believe from the evidence in this case, that the said Terminal Railroad Association of St. Louis, defendant herein, operated an engine

or had the same operated, which collided with the said flat car, as stated in other instructions herein, and that it was operated with the consent or permission of said receiver of said Wabash Railroad Company; and if the jury further believe from the evidence that the servants and agents of the said Terminal Railroad Association carelessly and negligently either failed to ring a bell or sound a whistle or give any other signal of the approach of such engine to said crossing; and if the jury further believe that the said servants or agents either saw or by the exercise of ordinary care might have seen the said flat car approaching said crossing and could by the exercise of ordinary care either have stopped or checked the said engine so as to prevent a collision with the said flat car; and if the jury further believe that the said servants or agents failed so to do and that there was a collision between the said engine and the said flat car, and that said Gaetano Cuccio was exercising ordinary care for his own safety and that the result of such collision was that the said Gaetano Cuccio was killed; and if the jury further believe that such acts, or any of them, of the said servants or agents directly caused the death of the said Gaetano Cuccio, then said plaintiff is entitled to recover from said Terminal Railroad Association and the said receiver of the said Wabash Railroad Company and your verdict must be for her and against the said defendants.'' Keele v. Railroad, 258 Mo. 62 and cases cited; Wasmer v. Railroad, 166 Mo. App. 215, 219.

*Leahy, Saunders & Barth* for respondent.

(1) A push car on the street railroad in not within the contemplation of section 3303, R. S. 1909, and the cases cited by appellant Terminal Railroad Association do not apply. The purpose of this statute was to protect passengers on street cars. This is a Terminal point, in which the Wabash does not participate and for which it does not seek credit. (2) The demurrers

in this case should have been overruled. The gate doctrine at a railroad crossing is firmly settled in this state and the person approaching such crossing has a right to rely upon the invitation of the open gates. McNamara v. Railroad, 126 Mo. App. 152, 159-160; Edward v. Railway Co., 94 Mo. App. 36; Wack v. Railroad, 175 Mo. App. 111, 122, 123; Yonkers v. Railroad, 182 Mo. App. 558, 568. Palmer v. Railroad, 142 Mo. App. 633, 645, 650; Moore v. Railroad, 157 Mo. App. 53; Montgomery v. Railroad, 181 Mo. 477, 507; O'Keefe v. Railroad, 108 Mo. App. 177; St. Louis Merchants' Bridge Terminal Ry. Co. v. Munger, decided Oct. 29, 1917, by the U. S. C. C. A. 8, and not yet reported; Moyer v. C. & A. R. Co., 198 S. W. 839 (Supreme Court of Mo. *en banc*); Beard v. Mo. Pac. Ry. Co., 197 S. W. 907 (4), 911 (Supreme Court of Mo.); Webb v. Deering S. W. Ry. Co., 196 S. W. 86, (5) 88 (Springfield Court of Appeals). For an exhaustive discussion of the gate doctrine, see the recent case of Swigart v. Lusk et al., Receivers of the Frisco, 196 Mo. App. 471, 192 S. W. 138 (Springfield Court of Appeals, February 14, 1917); Troll v. Drayage Co., 254 Mo. 332, 338, reannouncing the rule that, when different conclusions may be drawn from the facts, the question of alleged negligence must be submitted to the jury. The question of open gates at a railroad crossing, constituting an invitation to persons to cross and an assurance that it is safe to do so, has been settled by innumerable cases, both English and American, from which we cite: Stapley v. London, Brighton & South Coast Railroad Company, 1 Ex. Checker 21; State v. Boston & Mass. Railroad Co., 80 Me. 430; Wilson v. N. Y., New Haven & Hartford Railroad, 29 Atl. 258, 18 R. I. 491; Kane v. N. Y., New Haven & Hartford Railroad Co., 30 N. E. 256 (Court of Apps. of New York); Baltimore & Ohio Railroad v. Stumpf, 97 Md. 78 (citing a number of English cases, and a large number of American cases); Cleveland, Columbus & Cincinnati v. Sch-

neider, 45 Ohio State 678. All these cases declare
that an open gate is an invitation to persons approach-
ing the track to go across, and, as Lord Cairns said, in
the case of Directors, Etc., of N. E. Ry. Co. v. Wan-
less, 7 Eng. Irs. App. 12 open gates: "Amounted to a
statement of notice to the public that the line at that
time was safe for crossing, and was evidence of negli-
gence to go to the jury." (3) (a) The instruc-
tions in this case were exceedingly full and very favor-
able to the defendant; much more so than the law justi-
fies. There was no error in plaintiff's instructions, and
all instructions must be read together. Instruction
No. 2 for plaintiff, requiring the jury to find that
"Cuccio was exercising ordinary care for his own
safety," contained an absolutely necessary limita-
tion in view of the plea of contributory negligence in
the answer of the Wabash, and it will be noted that in
the Wabash brief it is not even claimed that this in-
struction is erroneous. Hall v. Coal & Coke Co., 260
Mo. 351; Humphreys v. Railways Co., 191 Mo. App.
710, 720, 721; Pearson v. Lafferty, 193 S. W. 40, 43 (St.
Louis Court of Appeals); Enloe v. Car & Foundry Co.,
240 Mo. 440, 449. Under these authorities the omission
of the above quoted clause would have been error. (b)
The instruction as to measure of damages was proper.
This is a Wabash point, not supported by the authority
of the Terminal. Browning v. Railway Co. (en banc),
124 Mo. 55, 71-72, cited and approved in the case of
Minter v. Bradstreet Co., 174 Mo. 444, 492, 493, and
in the case of Smith v. Fordyce, 190 Mo. 30. Also see
Boyd v. Railroad Company, 236 Mo. 54, 88-92, where
the form of instruction in the instant case on the point
on which it is attacked is approved, which instruction
is found in Fugler v. Bothe, 117 Mo. 491. Also see the
recent case of Albert v. Terminal Railway Co., 192
Mo. App. 665, 675-678. (4) There is a presumption
that the deceased used due care for his own safety
and acting suddenly in a position of imminent and
unforeseen peril, he is held to only such care as the

circumstances would. require. Swigart v. Lusk et al., 196 Mo. App. 471, 480. It is. probable that had plaintiff not changed his mind about stopping he could have done so before he reached the track, but we do not understand defendant to controvert the fact that he was then acting under excitement and peril, and that the *law does not require one under such circumstances to do, at his peril, the thing which afterwards appears to have been the safest.* Kleiber v. Railroad, 107 Mo. 240, 247, 17 S. W. 946; Wack v. Railroad, 175 Mo. App. 111, 125, 157 S.'W. 1070; Weigman v. Railroad, 223 Mo. 699, 720, 123 S. W. 38; Hanna v. Railroad, 178 Mo. App. 281, 286, 165 S. W. 1148; Donohue v. Railroad, 91 Mo. 357, 364, 2 S. W. 424, 3 S. W. 848; Underwood v. Railroad, 190 Mo. App. 407, 418, 177 S. W. 724. *This principle is especially applicable where defendant has, by its neglect of duty and failure to give timely warning, lulled plaintiff into a sense of security and brought him unawares into the peril from which he seeks to extricate himself.* Edward v. Railroad, 94 Mo. App. 36, 45, 67 S. W. 950; Baker v. Railroad, 147 Mo. 140, 166, 48 S. W. 838; International & G. N. Railway v. Isaacs (Texas), 168 S. W. 872; Dickenson v. Railroad, 81 Atl. 104, 37 L. R. A. N. S. 150. (Italics ours.)

BECKER, J.—This is an action for damages for the death of plaintiff's husband alleged to have resulted from the negligence of the defendants. The case was tried before a judge and jury, a verdict in the sum of $3000 resulting in favor of plaintiff and against the defendants. From a judgment rendered thereon the defendants appeal.

The petition as filed was against the United Railways Company of St. Louis, Terminal Railroad Association, and Edward B. Pryor, as receiver for the Wabash Railroad Company. It will not be necessary to notice either the pleadings or the evidence in so far as it refers to the United Railways Company of St. Louis in that the trial court sustained its demurrer at the close of the plaintiff's case.

The plaintiff's petition is based upon the negligence of the defendant, receiver for the Wabash Railroad Company, in the alleged failure of its watchman or trainman to sound the gong or to lower the railroad crossing gates erected and maintained by it at the intersection of Page avenue and its tracks, the point at which the plaintiff's husband met with his injuries which caused his death, and the petition sets up the negligence of the defendant, Terminal Railroad Association in backing its engine over the tracks of the United Railways Company, without having given any warning or signal of its approach and without having anyone stationed upon the advancing end of the tender of the locomotive as required by the rules of said defendant company. The defendant Terminal Railroad Association filed a general denial, as did the receiver of the Wabash Railroad Company, together with a plea of contributory negligence.

We are able to adopt practically the statement of facts as is presented by the appellant, Terminal Railroad Association, as follows:

"The facts as developed on the part of the plaintiff in her case in chief were that her husband, the decedent, was at the time of the accident that resulted in his death, a man of about thirty-five years of age, in good health and sober and industrious and had been earning about two dollars per day as a section laborer in the employ of the United Railways Company of St. Louis. On October 30, 1913, the day of the accident, he was working with other laborers on track repairs on a line of street railway in the county of St. Louis, west of the crossing of said street railway track with the tracks of the Wabash Railway, then operated by the defendant Pryor, as receiver, at Page avenue."

"The street railway track ran east and west and the railroad tracks substantially north and south. About noon, the deceased with three fellow laborers, all section hands, and the foreman of the United Railways Company, boarded a push car at a point about a city

block west of the crossing and with their tools on the car, proceeded eastwardly toward the crossing, their intention being to go beyond the crossing to another point of work."

"The push car was a flat car, without equipment for its mechanical propulsion and without being equipped with any braking device. It could be stopped when proceeding by gravity by blocking the wheel with a shovel or piece of wood. For the distance from where the car started, a block or more from the crossing, it was down grade to beyond the crossing. Shortly after the start of the car the foreman of the United Railways Company stepped off the car to talk to another laborer."

"South of the street railway tracks near the crossing there was a bank of earth which obstructed the view of trains proceeding northwardly on the railroad tracks. On the north side of Page avenue and just west of the railroad tracks there was a building on the second floor of which there was installed the levers for operating the interlocking switching plant of the Wabash Railway and the levers for operating gates across Page avenue on the east and west sides of the crossing."

"The witnesses for the plaintiff testified that the gates were up or open from the time the push car started on its journey," and remained up until after the collision, "and that they did not hear any bell ring, either the bell signal on the side of the gate tower or the bell of the engine involved in the accident."

"Defendants' testimony was that this train was operated by the employees of the Terminal Railroad Association of St. Louis and had finished making a delivery of cars to the Wabash Railway. The tracks were the tracks of the Wabash Railway and the gates were operated by a Wabash gateman."

"In making this delivery, the Terminal crew backed the cars that the engine was shoving onto a side or passing track. When the cars that were to be delivered to the Wabash had been cut off from the rest

of the train, a signal, by means of a dwarf or pot signal which was a low switchstand, was given by the gateman. This meant that the track was clear for the engine and attached cars to come out of the passing track and move northwardly and over the crossing.''

Thereupon the engineer started to back north along the passing track onto the main track of the Wabash Railroad Company. The freight cars were attached to the front end of the locomotive and were being pulled along by the engine so that the tender or tank of the locomotive was the front end of the train and there was nobody stationed on the rear of the tender to warn persons at the crossing of the approach of the train, as was required by the rules of the Terminal Railroad Association.

''The engineer was in the cab on the right side which at that time was the west side of the engine proceeding northwardly.''

''It was not contended nor does the evidence of plaintiff nor any of all the evidence show that the train was being operated at any rapid rate of speed.''

''The speed was given by various witnesses as from four to six miles per hour at the time of the collision with the push car. The point from which the engine was started after the clear track signal was given, is stated in the evidence as being from one hundred and twenty to two hundred feet from the crossing. Two hundred feet is the distance given on the map of the tracks introduced in evidence and this defendant concedes was the distance.'',

''The testimony of the witnesses for this defendant shows that the engine was equipped with an automatic bell ringer and that the bell on the engine was started to ring when the engine was put into motion or just before that and continued to ring until after the accident.''

''The defendant's testimony also showed that at the time the push car was coming down the grade toward the crossing, a bell attached to the side of the gateman's tower was rung to announce the lowering of

the gates, and that the gates were being lowered when the push car was one hundred and fifty feet to two hundred feet from the crossing.''

The testimony as to the speed attained by the push car when it reached near the point of collision is contradictory. Plaintiff's testimony varied from ''slow'' to ''pretty fast,'' while defendants' testimony was that the push car was moving from ten to twelve miles per hour, to a statement by a witness that the car came down ''awfully fast.''

We will consider first the assignment of error set forth by the appellant, Terminal Railroad Association, namely, that the court erred in refusing to give its instruction in the nature of a demurrer to the evidence as requested by it at the close of the plaintiff's case in chief, and again offered and refused by the court at the close of the entire case, on the ground that under plaintiff's testimony it appears that the push car was not stopped not less than ten feet nor more than twenty feet from the crossing of the Wabash Railroad tracks and the street railway tracks, as required by section 3303, Revised Statutes of Missouri, 1909. This assignment of error requires that we decide as to whether a flat car, such as the deceased was riding upon at the time he met with his injuries and which has been termed throughout the record as a push car, and which is without any equipment for its mechanical propulsion and is not equipped with a braking device, is such a ''car'' as to fall within the intendment of said section 3303, Revised Statutes of Missouri, 1909.

It must be conceded at the outset that under the broad, generic term, ''car,'' this push car would undoubtedly be included therein, but when we have in mind the language of the statute and the objects that it seemingly was designed to accomplish, we unhesitatingly come to the conclusion that a push car such as we are considering in the instant case does not fall within the purview of the statute. This section provides:

''It shall be the duty of every street railway company or corporation operating a street railway across

the tracks of a railroad company to bring its cars to a full stop at least ten and not more than twenty feet before reaching the tracks of the railroad company. And it shall be the duty of the conductor or some other employee of the street railway company to go forward to the tracks of such railroad company for the purpose of ascertaining whether a train is approaching such crossing.''

The record discloses that the push car was merely a flat car some six feet by nine feet, resting upon four wheels with no mechanism for mechanical propulsion, and wholly without any system of brakes, and intended solely to have placed upon it the tools and other equipment of the laborers who were engaged in making track repairs, and that the push car was, as its name implies, to be pushed by the laborers by hand along the track from place to place where they might be working, and excepting under the most unusual circumstances the car would never attain a speed greater than that of the laborers walking along pushing the car, nor was its normal use intended to be for the purpose of carrying any persons upon it. It would take a wide stretch of imagination to hold that such a push car was within the intendment of said statute. When one reads section 3303 A, Session Acts of 1913, pp. 189 and 190, which requires, among other things, that every street railway company, ''for the convenience, health and comfort of the conductor and motorman and the person or persons operating, controlling and in charge of any and all its cars'' furnish ''one stool or seat for each and every such conductor, motorman or person so operating, controlling or in charge of each, any and all its said cars to use and occupy said stool or seat for a portion of each and every trip any such car may make for a distance or not less than twenty-five per cent of the full length of all the track or tracks traversed by said car,'' it makes it even clearer that sections 3303 and 3303A are not applicable to a push car. We have been cited some authorities which have held that a hand car, which is a car admitted to be equipped with mechanical

apparatus for its propulsion and which is in general use for the purpose of conveying laborers and others (often for considerable distances along the tracks of steam railroad companies) falls within the intendment of certain statutes. Such cases are not authority in considering a push car which though a "car" in the broadest use of the word, yet has characteristics peculiarly its own, being without an mechanical apparatus for its propulsion and is primarily intended to convey tools and kindred paraphernalia used by the workmen, yet not intended to be used for the conveying of the workmen themselves. But whether or not a hand car would fall within the purview of our statute is a matter not before us and it is therefore not necessary for us to decide. We hold that a push car of the kind and description as the record in this case shows, does not fall within the requirements of section 3303, Revised Statutes of Missouri, 1909, and we rule this point against the said appellant.

It is next urged that the court erred in overruling the demurrers of each of the defendants, who are appellants here, on the ground that the plaintiff under the evidence should have been held guilty of contributory negligence as a matter of law. We do not so read the record in this case. According to the testimony adduced by plaintiff it appears that at the intersection of the Wabash Railway tracks and Page avenue, on which the said street railway tracks of the United Railways Company are laid, there is a large traffic and that some years ago the Wabash Railroad Company erected a switch tower at this point and erected gates which are operated by the employee in the tower, and that there was a watchman in the tower on the day in question, and that the gates were in working order; also that a gong had been installed on the outside of the switch tower which it is the duty of the watchman in the tower to ring immediately before lowering the gates. The record further shows that the deceased was thoroughly

familiar with this condition of affairs and with the fact that it was the custom to lower the gates upon the approach of any train. On this particular day however, according to the testimony for plaintiff, the deceased, as well as his three companions, before going onto the push car at a distance more than a block away from the tracks, looked and saw no train in sight and found that the crossing gates were open, and the testimony of each of the three companions who were on the push car with the deceased is to the effect that the gates remained open up to the time the tender of the locomotive struck the push car. In addition to the element that the gates were thus left open we have the testimony that the gong on the tower was not rung, and that the bell on the Terminal Railroad Association's engine was not rung, nor any whistle blown, nor was a man stationed on the tender, as was required by the rules of the defendant, Terminal Railroad Association. And at the southwest corner, where the street railway tracks and the Wabash Railroad tracks intersect there is a mound or hill of sufficient heighth to shut off the view of the men riding on the push car to such an extent that they could not see an approaching train until they were within approximately twenty to forty feet of the railroad tracks.

Such being the record we hold that the deceased could not be held guilty of contributory negligence as a matter of law and that the court properly held the plaintiff had made out a prima-facie case entitling her to go to the jury. In such a case the burden then shifts to the defendants, if they rely upon plaintiff's negligence, to disprove or overcome that case to the satisfaction of the jury. And such prima-facie case having been made out, the case can never be peremptorily taken from the jury; for however strong the contraverting testimony of plaintiff's contributory negligence may be, its credibility and weight are for the jury. [See Peterson v. Chi. & Alton Ry.

Co., 365 Mo. 462, l. c. 479, 178 S. W. 182, and cases there cited.]

In so holding we have in mind that the duty of exercising common prudence to avoid danger on the part of persons approaching a public railway crossing is not removed in cases where the railroad company fails to observe the requirements of law and proper care, yet if "he use such reasonable prudence for his own safety as the law of common prudence enjoins, he has the right, in the absence of information to the contrary, in determining whether the way is open and safe, to rely upon the presumption that the corporation will perform its duty and observe the precautions imposed upon it." [Weller v. C. M. & St. Paul Ry. Co., 120 Mo. 635, l. c. 653, 23 S. W. 1061; 25 S. W. 532, and cases there cited.] When, however, as in this case there are gates maintained at the public crossing and a gong for the purpose of warning pedestrians and others of the approach of the train, and such gong is not sounded, and the plaintiff's testimony, if true, shows that the gates were not lowered, and the approaching train does not ring its bell or blow its whistle nor give any warning of its approach, and it further appears that the locomotive is proceeding with the tender first with no one stationed at the advancing end, as required by the rules of the defendant, Terminal Railroad Association, the plaintiff cannot be held to have been guilty of contributory negligence as a matter of law. [Yonkers v. St. L. I. M. & S. Ry. Co., 182 Mo. App. 558, and cases therein cited.] [See, also, Railway Co. v. Schneider, 45 Ohio St. Rep. 678; State of Maine v. Boston & Maine Ry. Co., 80 Me. 430; Wilson v. N. Y., N. H. & H. Ry. Co., 18 R. I. 491.] It is well to note in this connection that the cases cited by the appellants on this point are not gate crossing cases, and therefore are not authority in a case of this kind where there is the added feature of railway crossing gates which plaintiff's testimony shows were relied upon by the de-

ceased and which were not lowered upon the approach of the train which collided with the push car on which plaintiff was seated. And what we have said above is not affected by the argument of the learned counsel for the appellant, Terminal Railroad Association, that the watchman in the tower was not its employee, nor were the tracks upon which the collison occurred, nor the gates erected thereon, owned or operated by it, and therefore it could not be held for the negligence, if any, in the failure of the watchman to close the gates upon the approach of said defendant's train. The Terminal Railroad Association, defendant, may be found liable if it passed over said street railway tracks and failed to give the necessary warning of its approach; and under the record in this case its liability *vel non* was properly held to be a question for the jury. [Wills v. Atchison T. & S. F. Ry. Co., 133 Mo. App. 625, l. c. 636, 113 S. W. 713.]

We find no merit in the assignment of error directed at the instructions. The instructions given correctly, fairly and fully put the case to the jury, and the amount of the verdict is reasonable. Finding no error prejudicial to appellants the judgment is accordingly affirmed. *Reynolds, P. J.*, and *Allen, J.*, concur.