HIXSON, *Appellant,* v. THE ST. LOUIS, HANNIBAL & KEOKUK RAILROAD COMPANY.

**Railroads:** DUTY OF TRAVELER APPROACHING: CONTRIBUTORY NEGLIGENCE. One who approaches a railroad crossing at a locality familiar to him, where the track cannot be seen, and where the noise of an approaching train, if close, would drown the noise of his buggy, and who does not stop to listen for the train, nor look for it until

upon the side-track eight and a half feet from the track, although warned in a manner to attract his attention, is guilty of such contributory negligence as will preclude a recovery for an injury sustained from the passing train while attempting to cross.

*Appeal from Hannibal Court of Common Pleas.*—HON. THEO. BRACE, Judge.

AFFIRMED.

*R. E. Anderson* and *T. H. Bacon* for appellant.

The court, after hearing all of the testimony on both sides, had no right to direct a verdict for defendant. *Woods v. Atlantic*, 50 Mo. 112; *Kelly v. Hannibal*, 70 Mo. 604 The trial court only has the right to set aside the verdict and grant a new trial, and has no right to dictate the verdict of the jury in advance. *Lockwood v. Atlantic*, 47 Mo. 50. The case is distinguishable from that of *Henze v. Railroad Co.*, 71 Mo. 636. Appellant did not fail to listen. If he had, unless it conclusively appears there was something audible, he was entitled to a jury. *Baxter v. Troy, etc.*, 41 N. Y. 502; Am. and Eng. R. R. Cases, vol. 6, p. 191; *Strong v. Placerville*, 8 Am. and Eng. R. R. Cases 273; *Smedis v. Brooklyn*, 88 N. Y. 13; 88 N. Y. 445. Any laxness on appellant's part in approaching the crossing should be attributed to the absence of bell-ringing, and defendant cannot take advantage of any such negligence, superinduced by its own negligence. *Tabor v. Missouri, etc.*, 46 Mo. 353; *Morrissey v. Wiggins*, 47 Mo. 525; *Johnson v. Hudson*, 20 N. Y. 66; *Jetter v. New York, etc.*, 41 N. Y. 162; *Penn. v. Ogier*, 35 Pa. St. 60. Defendant and its licensor were jointly liable for the obstructed view and passage caused by box cars on the side-track. *Clement v. Canfield*, 28 Vt. 302; *Ohio v. Dunbar*, 20 Ill. 623; 1 Redfield R'y, (1 Ed.) p. 590, § 142, note 8. The licensor had no right to obstruct Third street crossing with a side-track. *Lackland v. North Missouri, etc.*, 31 Mo. 181. The ordinance being in evidence showed that the speed, if over six miles an hour, was ex-

cessive. *Fanning v. Voelker*, 40 Mo. 129. Appellant's most prudent course was to cross as soon as possible. *Mackay v. New York*, 35 N. Y. 75.

*Easley & Russell* and *W. P. Harrison* for respondent.

Plaintiff's acts were so negligent and incautious as to bar his recovery. *Henze v. Railroad Co.*, 71 Mo. 636; *Turner v. Railroad Co.*, 74 Mo. 602; *Railroad Co. v. Beal*, 73 Pa. St. 5,03; *Benton v. Railroad Co.*, 42 Iowa 193; *Railroad Co. v. Miller*, 25 Mich. 274. The violation of the ordinance would not make a case against the defendant, without the further fact being shown that such violation caused the injury. *Karle v. Railroad Co.*, 55 Mo. 476. Plaintiff cannot hold defendant accountable for the result of his own impatience and carelessness. *Blacker's Ex. v. Receivers, etc.*, 18 Am. Law Reg. 562.

Norton, J.—This suit was brought to recover damages alleged to have been sustained by plaintiff, in consequence of the negligence of defendant in running its locomotive at Third street crossing, in the city of Hannibal, over and against a buggy in which plaintiff was riding, throwing him therefrom, and inflicting upon him serious personal injuries. It is alleged that defendant was running its train at the speed of fifteen miles an hour, without ringing its bell or sounding an alarm.

Defendant's answer, besides containing a denial of the above averments, sets up that the injuries to plaintiff were occasioned by his own carelessness and negligence.

At the close of all the evidence the court instructed the jury that plaintiff was not entitled to recover, whereupon plaintiff took a non-suit and judgment was rendered for defendant, from which plaintiff has appealed, and the only question which the appeal presents is as to the propriety of the action of the trial court in sustaining a demurrer to the evidence.

22—80

It appears from the evidence that the track of the railroad which defendant was operating crossed Third street, in the city of Hannibal; that plaintiff on the day of the accident was riding in a buggy drawn by one horse on said Third street, and was traveling south toward said crossing; that on each side of said street on the north of said crossing for a distance of one block, there were piles of lumber of sufficient height which, with cars standing on a switch or side-track, shut off any view of defendant's track; that because of the lumber and the cars on the side-track a person approaching said crossing from the north could not see the track of defendant's road to the west until after the south rail of the side-track was passed; that the south rail of the side-track was about eight or eight and one half feet from the north rail of the main track on which the engine was running; that a person after getting one or two feet south of the south rail of the side-track could see the main track in the direction defendant's train was coming for about seven hundred feet.

Plaintiff, who was examined in his own behalf, testified as follows:

"That from the Hannibal & St. Joseph railroad, on Collier street, to defendant's railway, the piles of lumber on the west side of Third street occupied a third or fourth of the width of the street. The approach on Third street to defendant's track was barely wide enough for two teams to pass each other. That on June 11th, 1880, he and Mr. Lewis Ross were in a buggy, drawn by one horse, going south on Third street, and on reaching the Hannibal & St. Joseph railroad crossing, the defendant's railroad being a block further south, they stopped; they then crossed the Hannibal & St. Joseph railroad and drove on towards the defendant's track. Witness was on the right side of the buggy; was driving with the reins in one hand and the whip in the other. When about fifty yards from the defendant's track witness checked his horse; did not stop him perfectly still as before, but came down to a

slow ·walk and inquired of Ross if he heard anything. Thinks he was on a graveled road, and a buggy makes more noise on that kind of road. Guessed there was nothing in the motion of the buggy to prevent his hearing the approach of a train. Did not hear any bell; did not hear anything; could not hear any sound of a moving train. To inform himself whether there was a train coming or not witness did as people generally do, check up or stop. By checking up witness meant going in a walk or standing still. In approaching the crossing they traveled slowly, not out of a walk, till they got on the track. Did not see the train until after coming out from the car. Could not see the train till they got around the box-car; was looking both ways far as he could. The left side of the buggy was loose and made some noise. Tried to hit the horse but the engine hit first. The engine hit the hind wheel of the buggy and threw him to the south side of the track, the buggy partly on him. The engine mashed his left arm so that it had to be taken off. His left lung was partly paralyzed and his back was affected, causing great pain. The locomotive was pretty close to him when he first saw it; its speed about twelve to fifteen miles per hour. When north of the Hannibal & St. Joseph railroad he began to listen for the sound of a train on that road. When somewhere between the two roads began to listen for a train on defendant's road. Could not see anything on either side of the street. Lived here since 1855 off and on. Had very seldom used that crossing in the last five years. Had gone over it a good many times the last year. His business carried him in that direction but not regularly. Had not crossed before for about two weeks. The time of the accident was between ten and eleven o'clock. Had crossed the side track when he started his horse over main track. Commenced looking for a locomotive when he got on the side track. Could not have seen a train for the box-car. The distance visible on the main track depended on how far the box-car was east and how close you were to it.

When he made the attempt to strike his horse with the whip the front wheels of the buggy were on the track he guessed. When I first saw the train the horse probably had his front feet across the main track on the south side; not certain. His feet were off. The front wheels were on the track. This would not have brought witness between the tracks. Had to pass the box-car to see the train. A train that is very close would make more noise than a buggy, enough to overcome it."

Witness Jackson, on part of defendant, who was engaged in loading lumber on a wagon on Third street near the crossing, testified that he hallooed to plaintiff and said, "look out, there is a train coming;" and witness Yates who was assisting Jackson in loading the lumber said, "hold up there—there is a train coming right there." Both these witnesses testified that they spoke in a tone of voice loud enough for plaintiff to hear it; that they did not know whether he heard them or not; that he turned and looked over his shoulder; did not stop but drove on. Alvin White, who was near three hundred feet away, testified that he heard Jackson and Yates halloo to plaintiff. Jackson and Yates testified that when they cried out plaintiff was about twenty-five feet from them. There was discrepency in the evidence as to the rate of speed at which the train was run, some of the witnesses put it at five and others at fifteen miles per hour. There was also discrepancy as to whether the bell was rung or whistle sounded. The locomotive was attached to a train of eight loaded freight cars and the way car.

According to plaintiff's own version of the accident under the doctrine laid down in the cases of *Henze v. Railroad Co.,* 71 Mo. 636 and *Turner v. Railroad Co.,* 74 Mo. 602, he was guilty of such contributory negligence and disregard of the surroundings as not to entitle him to recovery. He had known the locality for about twenty-five years, was familiar with 'the surroundings, and notwithstanding he was travelling on a graveled road in a buggy,

the left side of which was loose, and made a noise, and notwithstanding the fact that the sides of the street were so obstructed with piles of lumber that he could not see defendant's track, and notwithstanding the fact to which he testified that .the train if close would make noise enough to overcome the noise of a buggy, and that the train consisting of a locomotive and eight freight cars loaded, was near or close before plaintiff reached the switch, as the sequel fully proved, yet he did not stop to listen for the train nor commence looking for a train till he got on the side track. According to his own evidence the train, if near, would have made sufficient noise to overcome that of the buggy, and if so he must necessarily have heard it, and to undertake to cross under such circumstances, to say nothing of the warning given him by Jackson and Yates that " a train was right there," " to hold up," in tone of voice loud enough to be heard a block or three hundred feet distant, and which caused plaintiff to turn and look over his shoulder, amounted to reckless carelessness.

This case is distinguishable from the case of *Johnson v. Railroad Co.*, 77 Mo. 546, in this, that in that case the plaintiff stopped at a point where he could see the track of the road for a considerable distance, looked and listened for a train and neither seeing nor hearing one proceeded on his way.

Judgment affirmed. All concuring.