EMMETT J. RAWIE, Administrator of Estate of JOHN
COONEY, v. CHICAGO, BURLINGTON & QUINCY
RAILROAD COMPANY, WILLIAM F. WITT-
ROCK, ST. LOUIS MERCHANTS BRIDGE TER-
MINAL RAILWAY COMPANY, FRANK E.
BARNES and ALFRED SCHWARTZ; CHICAGO,
BURLINGTON & QUINCY RAILROAD COM-
PANY and WILLIAM F. WITTROCK, Appellants.

Division One, July 30, 1925.

1. **NEGLIGENCE: Instructions: Primary: Humanitarian Rule: Con-
sistent.** Two instructions for plaintiff, one submitting his case to
the jury under the humanitarian rule, in that the engine could have
been stopped in time to have avoided the injury to the occupant
of a motor truck about to cross the track, and the other submit-
ting the issue of primary negligence, in that the engine was being
run at an excessive rate of speed, are not inconsistent. The sub-
mission of an instruction based on the humanitarian doctrine does
not deprive plaintiff of his right to have an instruction based on
excessive speed, even though there is a plea of contributory neg-
ligence. Though the speed of the engine was excessive, that fact
was not necessarily inconsistent with the further fact that the
enginemen discovered or ought to have discovered the peril of the
occupants of the truck in time to have avoided injuring them,
and there being evidence to support both theories it is the pro-
vince of the jury to determine which act of negligence was the
proximate cause of the injury.

2. ———: ———: **Humanitarian Rule as to Company Alone: Primary
Negligence as to Company and Active Agent: Consistent.** Although
the case was submitted by one instruction under the humanitarian
rule against the company alone, and by another against both the
company and the engineer on the theory of primary negligence, in
that the engine was run at an excessive speed, yet if the jury re-
turned a verdict against both defendants and evidently found the
excessive speed of the engine was the proximate cause of the in-
jury, it cannot be held that no case against the company was left
because no recovery against the engineer was authorized by the
first instruction. Excessive speed being hypothesized in both
instructions, the theory that if the engineer was not guilty of
negligence the company cannot be held liable is not applicable.

3. ———: **Contributory as Matter of Law: Joint Enterprise: Occupants of Motor Truck: Instructions.** The motor truck, struck by defendant's engine as it was about to cross the railway track, was owned by and operated for a supply company by a driver who had been operating it over the particular crossing two or three times a week for four years; it was loaded with materials of the supply company to be delivered to the railroad for shipment; three other employees of the company were riding on the truck, for the apparent purpose of unloading the materials; one of them, the deceased, sitting at the right of the driver, had no control over the truck or the driver. *Held*, that it cannot be ruled as a matter of law that the driver and said deceased were so engaged in a joint enterprise that the contributory negligence of the driver, if there was such, can be imputed to deceased. Under such circumstances instructions for defendants telling the jury that the verdict must be for them if they found deceased and the driver were employees of the supply company, that both were "engaged together in transporting goods" for said company for the purpose of being shipped, and that the driver negligently failed to discover the approach of the backing engine, negligently failed to look and listen at a reasonable distance from the tracks, and that if he had looked and listened he could have discovered the engine in time to have stopped, or by the exercise of ordinary care could have had the truck under control, were as favorable to defendants as the facts warranted.

4. ———: **Contributory as Matter of Law: Dependent upon Facts.** Whether a person injured or killed by a railroad engine is to be held guilty of contributory negligence as a matter of law depends upon the facts of the particular case. No inflexible rule as to what facts constitute contributory·negligence can be laid down, but each case depends on its own facts and circumstances.

5. ———: ———: **Gates at Crossing.** For thirteen years gates had been maintained at a street crossing, not by the company whose engine struck the motor truck, but by another railroad company which had parallel tracks in the same street, and these gates were lowered to prevent vehicles from entering upon the tracks when trains were passing, and raised when the crossing was clear. The driver of the truck had been crossing the tracks two or three times a week for four years, and the deceased, another employee of the supply company which owned the truck and who sat beside the driver, had been employed for two years in unloading the truck, which was on its way to the railroad depot with materials to be shipped. The gates were not lowered as the truck approached the tracks, and the view up the tracks was obstructed, and deceased was the first to see an engine moving backwards towards the cross-

Rawie v. C. B. & Q. Railroad Co.

ing. By a loud cry he warned the driver of the danger, and the driver testified that the engine was then fifty or sixty feet away; that the truck was traveling four or five miles an hour; that at the time deceased cried out, the truck was within seven feet of the nearest rail of the track, and he immediately tried to steer to the right out of the way of the engine. Deceased immediately jumped, but the engine struck the truck and knocked it over on him. *Held*, that to require deliberation on the part of the driver would be unreasonable; that the fact that the gates indicated a clear track must be considered, and that under the circumstances the question of contributory negligence was properly submitted to the jury, and that the court could not rule that as a matter of law deceased was guilty of contributory negligence barring a recovery.

6. ———: **Contributory: Omitted from Plaintiff's Instruction.** An instruction for plaintiff covering the whole case, which requires the jury to find that defendant was negligent in driving its engine at an unreasonable and dangerous rate of speed, and that its collision with the truck upon which deceased was riding and his consequent fatal injury were the direct and proximate result of such negligence, is not erroneous in omitting defendant's plea of the contributory negligence of deceased, where other instructions are given for defendant which fairly and fully set out such defense.

7. ———: **Verdict against Both Company and Servant.** Section 4217, Revised Statutes 1919, authorizes a person having a right of action for the death of another, due to the negligence of a servant, to bring suit, at his option, against the master and servant, or severally against either master and servant, and in an action based upon that statute and brought against both, an instruction authorizing a verdict against both is not error. Section 4218, making the company "or" the employee liable for damages where death results to the person injured, does not apply to the instruction in an action based on Section 4217.

8. ———: **Humanitarian Rule: Discovering Peril.** It is not error to instruct the jury that before they can find for plaintiff under the humanitarian rule they must find that defendant actually saw, or by the exercise of ordinary care could have seen, the peril of deceased and his inability to extricate himself, where there is substantial evidence that defendant's enginemen by the exercise of ordinary care could have discovered that deceased was unable to extricate himself from his perilous position. And where there is such evidence, defendant is not entitled to an instruction telling the jury that under that rule plaintiff cannot recover unless defendant actually saw that the deceased was unable to extricate himself from his perilous position in time to stop the engine before striking him.

9. ———: **Amount of Damages: Verdict for Ten Thousand Dollars.** Under the statute (Sec. 4217, R. S. 1919) a verdict for ten thousand dollars, and not simply for two thousand, may be returned against a railroad company for the negligent killing of a traveler, even if he was a widower and there is no evidence that his surviving children or heirs were specifically damaged.

10. ———: **Verdict: All Damages.** A verdict fixing "plaintiff's damages" at ten thousand dollars for the negligent killing of a traveler, in that the sum fixed by it was termed "damages" instead of "penalty," does not contain a fatal infirmity.

Corpus Juris-Cyc. References: Appeal and Error, 4 C. J., Section 2938, p. 957, n. 66. Courts, 15 C. J., Section 515, p. 1090, n. 29. Death, 17 C. J., Section 75, p. 1232, n. 36 New; Section 184, p. 1317, n. 90; Section 222, p. 1341, n. 50. Negligence, 29 Cyc. p. 643, n. 30; p. 649, n. 84 New. Railroads, 33 Cyc. p. 982, n. 84, 85; p. 983, n. 86, 87; p. 1088, n. 40; p. 1103, n. 29; p. 1105, n. 35; p. 1121, n. 18; p. 1130, n. 81, 83; p. 1131, n. 88 New; p. 1134, n. 11; p. 1142, n. 49 New. Trial, 38 Cyc. p. 1605, n. 69; p. 1785, n. 90.

Appeal from St. Louis City Circuit Court.—*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Douglas W. Robert* for appellant.

(1) The deceased and the driver of the truck were engaged in a joint enterprise, hence the negligence of the driver was the negligence of the deceased. Tannehill v. Ry., 279 Mo. 158. To fail to stop, or look, or listen was negligence, barring a recovery under the statute which requires the highest degree of care on the part of those driving motor vehicles. Laws 1921, Ex. Sess., p. 91, sec. 19; Conrad v. Hamra, 253 S. W. 808; Threadgill v. Rys. Co., 279 Mo. 466; England v. Railroad, 180 S. W. 32. The deceased and the driver were guilty of such contributory negligence as a matter of law as to bar a recovery. State ex rel. Hines v. Bland, 237 S. W. 1018; Burge v. Railroad, 244 Mo. 76; Laun v. Railroad, 216 Mo. 563; Stotler v. Railroad, 204 Mo. 619; Schmidt v. Railroad, 191 Mo. 215; Huggart v. Ry., 134 Mo. 678; Hixson v. Railroad, 80 Mo. 335; Stillman v. Railroad, 266 S. W. 1005; Aldrich v. Railroad, 256 S. W. 93; Wolf v. Wab. Ry., 212

Mo. App. 26; Sullivan v. Railroad, 213 Mo. App. 20. And even without reference to the driver, the deceased, in failing to look out for his own safety, was guilty of contributory negligence, as a matter of law, which would prevent recovery. Friedman v. United Rys. Co., 293 Mo. 235; Sorrell v. Payne, 247 S. W. 462; Fechley v. Traction Co., 119 Mo. App. 358; Leapard v. K. C. Rys., 214 S. W. 268; Burton v. Pryor, 198 S. W. 1117. (3) There was an absolute failure to make a case under the humanitarian doctrine. Alexander v. Railroad, 289 Mo. 599; State ex rel. v. Reynolds, 289 Mo. 479; Tannehill v. Railroad, 279 Mo. 158; Keele v. Railroad, 258 Mo. 62; Rollison v. Railroad, 252 Mo. 525. (a) The demurrer to the evidence as to defendant Barnes having been sustained, and all recovery as to defendant Wittrock on the humanitarian doctrine having been abandoned by the plaintiff, there was no case left against the defendant railroad. If the servants were not guilty the master could not be held liable. McGinnis v. Railroad, 200 Mo. 347; Wade v. Campbell, 211 Mo. App. 274; Baird v. Flour Mills, 203 Mo. App. 432. (b) There was no evidence that the engine could have been stopped, while going thirty, thirty-five or forty miles an hour, in time to have avoided the collision. Fleming v. Railroad, 263 Mo. 180; Hamilton v. Railroad, 250 Mo. 714; Henson v. Railroad, 256 S. W. 771; Ross v. Davis, 213 Mo. App. 209. (c) There was no evidence that the engine could have been stopped in time to avoid the injury with safety to the men upon it. Burge v. Railroad, 244 Mo. 76; Whiteside v. Railroad, 186 Mo. App. 608. (4) Instructions 1 and 2 conflict with each other, and are inconsistent. Hall v. Railroad, 219 Mo. 553; Bensieck v. Cook, 110 Mo. 182; Tower v. Moore, 52 Mo. 120. (a) Instructions 1 and 2 purport to cover the whole case, yet Number 1 omits the necessary finding against the servant to hold the master liable and number 2 omits to negative negligence on the part of the plaintiff's intestate and the driver. Enloe v. Fdy. Co., 240 Mo. 443; Johnson v. Bldg. Co., 171 Mo. App. 543; Kelly v. City St. Joe, 170 Mo. App. 258. (b) In-

structions 1 and 2 conflict with Instructions 6, 8 and 9.
(5) Plaintiff's Instruction 1 was not authorized by the
evidence and in addition omitted many elements required
by the humanitarian doctrine and included many things
not in the evidence. (a) The instruction authorized a
recovery against the railroad alone and omits all refer-
ence to defendant Wittrock. If Wittrock, the engineer,
was not liable, the employer, the railroad, was not. Mc-
Ginniss v. Railroad, 200 Mo. 347; Wade v. Campbell, 211
Mo. App. 274; Baird v. Flour Mills, 203 Mo. App. 432.
(b) The instruction failed to require the jury to find
from the evidence that these defendants saw, or by the
exercise of ordinary care could have seen that Cooney
was unable to extricate himself from "said imminent
peril." George v. Railroad, 251 S. W. 729. (c) It
fails to require the jury to find that warning of the ap-
proach of the engine would have been heard or heeded
by Cooney so that he would thereby remove himself
from danger. Green v. Railroad, 192 Mo. 143; George v.
Railroad, 251 S. W. 729; Alexander v. Traction Co., 249
S. W. 971; Battles v. U. Rys. Co., 178 Mo. App. 576;
Ziegler v. U. Rys. Co., 220 S. W. 1016; Ross v. Davis,
213 Mo. App. 209. (d) There is no evidence that the
engine could have been stopped at the rate of speed
plaintiff's evidence showed it was going thirty, thirty-five
or forty miles per hour. Hamilton v. Railroad, 250 Mo.
714; McKenzie v. Randolph, 257 S. W. 126; Ross v.
Davis, 213 Mo. App. 209; Champion Paper Co. v. Shilkee,
237 S. W. 109. (e) There is no evidence that a stop be-
fore the collision could have been made with safety to
the persons upon the engine while going at any rate of
speed. Burge v. Ry., 244 Mo. 76; Whitesides v. Railroad,
186 Mo. App. 608. (f) It authorizes the jury to find
that the truck and Cooney were "on said track" and
"were in a position of imminent peril of being collided
with said switch engine," while the engine was approach-
ing Tyler Street, and there is no evidence to support
this. Degonia v. Ry. Co., 224 Mo. 564; Champion Paper
Co. v. Shilkee, 237 S. W. 107. (6) Plaintiff's Instruc-

tion 2 was not authorized by the evidence and omitted many elements required to warrant a jury in finding for plaintiff upon the simple or primary negligence theory. (a) The instruction purported to cover the whole case on the primary negligence and ignored the negligence of the driver and the deceased. Jacquith v. Plumb, 254 S. W. 89; Kelley v. St. Joseph, 170 Mo. App. 358; Johnson v. Bldg. Co., 171 Mo. App. 543. (b) The only charge of negligence referred to is the rate of speed, which the jury were authorized to find high, excessive, unreasonable and dangerous "under the circumstances and conditions there." This of course included the fact that the gates were up, for which these defendants were not responsible, hence this instruction conflicted with defendant's Instruction 4 and 6. Wills v. Railroad, 133, Mo. App. 625. (c) The fact, if it was, that the engine was run at an excessive rate of speed, does not render defendants liable to one who is hurt by going on the track without looking or listening. Moore v. Transit Co., 95 Mo. App. 750. (d) This instruction authorized a verdict against both defendants. Sec. 4218, R. S. 1919, does not authorize a joint judgment. It provides that either the company operating at the time "or" the employee causing the death shall forfeit. The statute is penal and should be strictly construed. Grier v. Railroad, 286 Mo. 523. (7) Defendant's Instruction 10 should not have been modified, but should have been given as offered. There was no evidence that the defendants could by the exercise of ordinary care, have discovered that the deceased was unable to extricate himself from any perilous position. Cases cited under Point 3.

*John F. Clancy* and *Mark D. Eagleton* for respondents.

(1) The driver of the truck, although a fellow-servant of Cooney, was not subject to his direction or control and they were not upon any joint enterprise, and the negligence, if any, of said driver was not imputable

to Cooney. Rowe v. U. Ry. Co., 211 Mo. App. 537; Simpson v. Wells, 237 S. W. 526; Sluder v. Transit Co., 189 Mo. 107; Moon v. Transit Co., 237 Mo. 425. (2) Neither Cooney nor the driver of the truck was guilty of any negligence which contributed to cause this unfortunate collision. All of the lay witnesses testified that it was impossible to discover the approach of the south-bound train until the truck actually reached the rails of the first track. Cooney did actually discover it as soon as it was possible to do so, and thereafter made every effort to avoid injury. Brown v. Railroad, 252 S. W. 55; Moore v. Davis, 210 Mo. App. 181. (3) Plaintiff was entitled to go to the jury under the humanitarian doctrine. The evidence showed that the engine was traveling at the rate of from twelve to fifteen miles an hour and could have been stopped within twenty to twenty-five feet. The engineer testified that the engine was actually stopped within fifty feet from the time he applied his brakes and attempted to stop. Whenever the evidence shows the distance in which a train or car was stopped it abolishes the need of an expert. Ellis v. Ry. Co., 234 Mo. 685; Beier v. Transit Co., 197 Mo. 231; Griggs v. Transit Co., 228 S. W. 508; Hucksold v. U. Rys. Co., 234 S. W. 1074. (4) By submitting an instruction authorizing a recovery under the humanitarian doctrine plaintiff was not precluded from relying upon the assignment of negligence with reference to the excessive speed of the engine. Taylor v. Met. St. Ry., 256 Mo. 210; Montague v. Ry. Co., 264 S. W. 817. (a) It was not necessary to negative the defenses of contributory negligence which were submitted by the defendants in their instructions. State ex rel. v. Trimble, 291 Mo. 227. (b) Section 4217 clearly provides that in this character of action the plaintiff may elect to proceed either against the master and servant jointly, or may sue either the master or the servant. The plaintiff followed the statute and obtained a joint judgment against the master and servant. (5) In plaintiff's instruction under the humanitarian doctrine a verdict against the

defendant railroad was authorized, whereas under the instruction with reference to excessive speed a verdict against the defendant Wittrock, as well as the defendant was authorized. Under the humanitarian doctrine plaintiff was entitled to rely upon the failure of Wittrock, the engineer, or of Barnes, the fireman, or Leibolt, the foreman, who was on the front end of said engine, or any other employee on said engine, and was not confined to the negligence of any particular employee. The evidence showed that the fireman was on the side where he could discover the approach of the truck, and the engine foreman in charge of the crew was on the front where he could discover that the crossing gates were up and the crossing in use by pedestrians and vehicles. Cowherd v. Mo. Pac. 268 S. W. 107; Finn v. U. Rys. Co., 267 S. W. 416; Bocklitz v. Wells, 261 S. W. 955. (a) Plaintiff's instruction under the humanitarian doctrine required the jury to find that Cooney was unable to extricate himself from the position of peril. While this perhaps was not necessary under the decisions it was done for the purpose of negativing the defenses of contributory negligence, and the defendants can derive no benefit from the undue burden carried by the plaintiff. Karte v. Brockman, 247 S. W. 417; Banks v. Morris & Co., 257 S. W. 482. (b) The instruction required the jury to find that Cooney was injured as a direct and proximate result of the negligence set forth in the instruction. (c) Plaintiff was entitled to rely upon the testimony of the engineer to the effect that the engine was moving from twelve to fifteen miles an hour and upon the testimony of Beal, a co-employee, to the effect that the engine, at such rate of speed, could have been stopped within twenty to twenty-five feet. The engineer stated that he did actually stop within fifty feet, and that the collision had no effect upon the stopping of the train. See authorities under Point 3.

LINDSAY, C.—The cause of action is based upon Section 4217, Revised Statutes 1919. Plaintiff's intestate,

John Cooney, was killed on May 25, 1922, at about three o'clock in the afternoon, when an east-bound automobile truck in which he was riding was struck by a south-bound switch engine of the Chicago, Burlington & Quincy Railroad, at the crossing of Tyler and Main streets in the city of St. Louis. Tyler Street is an east-and-west street, and Main Street runs north and south. Tyler Street is about thirty-six feet wide from curb to curb. The truck was moving eastward along the south side of Tyler Street. Along the west side of Main Street ran two tracks of the defendant, the Burlington Company. The space between the east and west of these two tracks was six or seven feet. Extending north and south along the east side of Main Street were two or more tracks of defendant, St. Louis Merchants Bridge Terminal Company. Near the center of Main Street, between the tracks of the Terminal Company and the tracks of the Burlington Company and a short distance south of the south line of Tyler Street, there was a tower maintained by the Terminal Company, from which an employee of the Terminal Company operated the gates on the east and on the west side of the intersection of the two streets, the gates being lowered to shut off traffic of vehicles when trains were passing, and raised when the crossing was clear. The movement of one of the gates automatically moved the other. At the northwest corner of the crossing along the north line of Tyler Street, there was a building. The building was twelve feet north of the north curb of Tyler Street. The west rail of the west track of the Burlington Company was four or five feet east of this building. The engine which struck the truck in which Cooney and others were riding was moving southward on the east track of the Burlington Company. It was backing, and was not pulling any cars at the time. The engineer was on the east side of the cab of the engine, and the fireman on the west side. Three switchmen were on or about the step or foot-board of the tender, at its south end, as it moved southward. The truck on which Cooney and his companions were riding was owned

by Brecht Butchers Supply Company. It was a large truck with a trailer attached, both of which were heavily loaded at the time. Kulongoski, an employee of the Brecht Company, was driving the truck, and Cooney, a fellow-employee, was sitting on his right. Another employee of the Brecht Company was sitting down on the floor of the cab, at the feet of Cooney, and there was also another employee of the same company riding on the trailer. The crossing gates were up when the truck approached and went on the crossing. Other facts in evidence can best be given later, in their application to the questions raised.

. The plaintiff joined as defendants the Burlington Company, Wittrock, the engineer, and Barnes, the fireman, in charge of said engine; also the Terminal Company, and Schwartz the man in charge of the crossing tower.

The petition charged each of the two companies with maintaining and operating railroad tracks at the place mentioned; charged each with maintaining and operating the tower and gates; charged that Schwartz was employed by the Terminal Company, in the operation of said gates; and that in his duties as such, he was engaged in operating the gates and signals for both of said companies.

The petition is long and need not be set out. The acts of negligence charged against the Burlington Company and Wittrock and Barnes, its engineer and fireman, were excessive and dangerous speed in approaching the crossing, failure to keep a lookout for persons and vehicles, failure to sound any warning by bell or otherwise, failure to stop said engine before the collision, and failure to observe and to stop, in violation of the humanitarian rule. The acts of negligence charged against both defendant companies and defendant Schwartz were failure to lower the crossing gates, and failure to give, otherwise, any signal or warning of the approach of the engine.

The answers of the defendants, other than the Burlington Company, were general denials. The answer of that company in addition to the general denial, pleaded that Cooney, Kulongoski and the other occupants of the truck were engaged in a common enterprise, and that the death of Cooney was due to the negligence of Cooney himself, and the other occupants of the truck, in several respects.

At the close of the plaintiff's case the court gave the instruction offered by Barnes, the fireman, and plaintiff took a nonsuit with leave as to him; and at the close of all the evidence the court gave an instruction in the nature of a demurrer to the evidence offered by the Terminal Company and Schwartz; and, before submission, the plaintiff took a nonsuit with leave as to those defendants. Plaintiff is here on appeal from the action of the court in respect to the three defendants just mentioned. The court refused the peremptory instruction offered by the Burlington Company and Wittrock.

Plaintiff's case was submitted to the jury under two instructions authorizing recovery. Plaintiff's Instruction No. 1 submitted the case under the humanitarian doctrine, and against the defendant Burlington Company only, defendant Wittrock not being mentioned in that instruction. Plaintiff's Instruction No. 2 submitted the case upon primary negligence, and as against both the Burlington Company and defendant Wittrock. The verdict returned was against these two, and in the sum of ten thousand dollars.

Counsel for appellants Burlington Company and Wittrock devote no little part of their brief and argument to the fact that Instruction 1 submitting the issue, the humanitarian rule, was given, and then to complaint of defects in the wording of that instruction, in that it left out necessary elements, and also included things not in evidence.

It is urged that there was an absolute failure to make a case under the humanitarian doctrine; that the demur-

rer to the evidence having been sustained as to Barnes, the fireman, and recovery against Wittrock, the engineer, having been abandoned, or not included under Instruction 1, there was no case left against defendant Burlington Company; since, it is urged, if Wittrock was not liable, the Burlington Company was not. Related to this, it is urged that Instruction 1 was inconsistent with Instruction 2 for plaintiff; that both purport to cover the whole case, yet, that Instruction 1 omits the necessary finding against the servant to hold the master liable, and that Instruction 2 omits to negative negligence on the part of Cooney and the driver of the truck.

These objections, other than the last mentioned, will be disposed of at this time, and briefly, because, it is apparent that the verdict was returned in response to plaintiff's Instruction 2, submitting the case under the issue of primary negligence, and against both the Burlington Company and Wittrock.

I.    Counsel for the Burlington Company and Wittrock argue that under the two instructions the jury was confused and misled, and found against both defendants under the humanitarian doctrine, although Instruction 1 was directed only against the Burlington Company. Their argument is that the case was presented on the theory, in the first, that the deceased was negligent, and in the second, that he was not negligent, and they say the theory of Instruction 2 that the engine was operated at an excessive rate of speed is inconsistent with the theory that notwithstanding such excessive speed it could have been stopped in time to avoid the injury. The submission of an instruction under the humanitarian doctrine did not deprive the plaintiff of the right to have an instruction based upon the theory of the excessive speed of the engine. [Taylor v. Metropolitan St. Ry. Co., 256 Mo. l. c. 210; Montague v. Missouri & K. I. Ry. Co., 264 S. W. 813, 817.] Counsel suggest as to these two cases that in them

*Consistent Instructions.*

the question of contributory negligence did not arise, and that such plea was not set up in the answer in either case. But, in White v. St. Louis & M. R. Railroad Co., 202 Mo. 539, there were presented the two theories, negligence in running at an excessive speed, and negligence under the humanitarian rule, and in that case (1. c. 544) there was a plea of contributory negligence. It was held that there was no inconsistency.

In this case there was testimony for plaintiff tending to show that the engine was running at a speed of about thirty-five miles an hour, and testimony for defendants that its speed was twelve miles an hour, and Wittrock testified that he stopped the engine within fifty feet. Though the speed of the engine was excessive, that fact was not necessarily inconsistent with the existence of the fact that those in charge of the engine discovered or ought to have discovered the peril of Cooney and his companions in time to have avoided injuring them, and that being so, it was the province of the jury to determine which act of negligence was the proximate cause of the injury. [Farrar v. Railroad, 249 Mo. 210, 217.] The principles controlling under the humanitarian doctrine are fully expounded in Clark v. St. Joseph Ry. Co., 242 Mo. 570, and Banks v. Morris & Co., 302 Mo. 254. We take it to be conclusive here that the jury found that the excessive speed of the engine was the proximate cause of the injury. Under that view also, their finding was against the plaintiff under the humanitarian rule. There is evidence to support the theory of excessive speed. Kulongoski thought the engine moved at a speed of thirty to thirty-five miles an hour. Beal, one of the three switchmen, was at the west corner of the driving or forward end of the tender. He said the engine was moving at a speed of thirty-five or forty miles an hour. He said he saw the truck when he was about eighty feet from the point of collision. He gave no warning, but immediately jumped. He came to rest under the truck. Vogel, the switchman in the center, was killed. This ap-

pears from the statement of the witness Bushman. Lie-boldt, the switch foreman, who was at the east corner, is not accounted for. Wittrock, the engineer, was on the east side of the cab and did not see the truck before it was struck. Barnes, the fireman, on the west side of the cab, saw the truck come out from behind the shed or building on the northwest corner of Tyler and Main streets. When he first saw the truck he says he was ten or fifteen feet north from the north line of the shed, and said he "hollered to the engineer to stop," and the engineer applied the brakes and reversed the engine. Under the finding made upon Instruction 2, and under the evidence, there is no occasion here to discuss the contention of counsel that there was a failure to make a case under the humanitarian doctrine. Yet Wittrock said the engine was running at twelve miles an hour, and he could at that speed stop it within fifty feet. Nor is there reason to discuss the assertion of counsel for the Burlington Company and Wittrock that since the demurrer to the evidence as to Barnes was sustained, and recovery against Wittrock was not authorized under Instruction 1, there was no case left against the Burlington Company. This is urged on the theory that if the servants were not guilty, the master could not be held liable. [McGinnis v. Railroad, 200 Mo. 347.] The theory is not applicable here, because the finding is against both the master and the servant, and upon the ground that both master and servant were guilty of negligence, and the specific negligence hypothesized as to both, was excessive speed. Instruction 2 hypothesized Wittrock as the servant of the Burlington Company, and as such, driving and operating the engine for and on behalf of that company, and at an unreasonable and dangerous speed. Wittrock as engineer was the man who directly controlled the speed of the engine. The giving of both instructions cannot be held error upon the grounds so assigned.

II.   Going to the question of plaintiff's right to re-
cover at all under Instruction 2, it is contended that
Cooney, the deceased, and Kulongoski the driver of the
truck, were guilty of contributory negligence as a mat-
ter of law, and in this connection it is in-
sisted that they were engaged in a joint en-
terprise and therefore the negligence of the
driver was the negligence of the deceased, and it is fur-
ther urged that the highest degree of care is required on
the part of "every person operating a motor vehicle"
under the provisions of the statute. [Laws 1921, Ex. Sess.
p. 91, sec. 19.]

Contributory
Negligence.

In support of their contention that the men on the
truck were engaged in a joint enterprise counsel cite and
rely solely on the ruling in Tannehill v. K. C., C. & S.
Ry. Co., 279 Mo. 158. The facts in that case were ma-
terially different from those we have here.  The Tanne-
hill brothers were joint owners of the automobile; they
were partners in a real estate business; they were upon
a trip in which it appears, from the statement, they were
jointly interested.  They were in all respects principals,
and on equal terms, except merely that one of them was
driving the automobile.  It appears also that the one
who was killed was looking backward as their automo-
bile neared the crossing.  In the case at bar, all the men
on the truck were employees of the Brecht Company.
The truck was operated by Brecht Company through
Kulongoski as the driver.  In his testimony he terms
himself "chauffeur" and said he had been operating the
truck over that crossing two or three times a week, for
four years.  He said: "I had been driving the machine
a little over four years."  The truck was loaded with ma-
terials of Brecht Company for shipment.  Kulongoski
said: "My purpose was to deliver the freight to the
railroads."  Cooney had no control over the truck or
over Kulongoski.  It appears that Cooney was the first
of those on the truck to see the approaching engine.  The
purpose of Cooney and the two other men on the truck
is not explained otherwise than by the reasonable in-

ference that as employees of Brecht Company they were to unload or assist in unloading the truck at its destination. We cannot say as a matter of law that the negligence of Kulongoski, if it existed, is to be imputed to Cooney. [Simpson v. Wells, 292 Mo. 301; Mahany v. K. C. Railways Co., 286 Mo. 601; Moon v. St. Louis Transit Co., 237 Mo. 425.] Beyond that the defense that Cooney and Kulongoski were fellow-servants is not set up here by the master, but by a third party.

The court gave for these defendants instructions numbered 8 and 9, in which the court told the jury that if they found Cooney and Kulongoski were employees of the Brecht Company, owner of the truck, and Cooney and Kulongoski at the time mentioned were "engaged together in transporting goods for said Brecht Company for the purpose of being shipped," and if they found that Kulongoski, driver of the truck, negligently failed to discover the approach of the engine, negligently failed to look and listen at a reasonable distance from the tracks, and that if he had looked and listened he could have discovered the engine in time to have stopped, or by the exercise of ordinary care could have had the truck under control, the verdict must be for defendants. The defendants introduced in evidence the petition of the plaintiff in a suit brought against the Brecht Company, for the death of Cooney, based upon allegations of negligence of that company in employing Kulongoski as chauffeur, and negligence in failing to discover the approach of the engine and to warn Cooney as he was riding upon the truck.

Instructions 8 and 9, upon the question immediately under consideration, submitted defendants' theory as fully and favorably as the evidence warranted.

The evidence shows that Tyler Street, going east toward the Burlington tracks, was somewhat down grade, and also shows that beginning at a point a short distance north of Tyler Street the tracks of that company begin to curve somewhat to the southwest, and cross that street

curving southwestwardly. Three persons who witnessed the collision testified upon the trial, Beal and Kulongoski produced by the plaintiff, and Barnes, the fireman, produced by defendant.

Beal testified: ''I got on this engine about St. Louis Avenue. No stops were made until the collision occurred. We were going to the Mound Street yards. The accident happened about seven minutes to three in the afternoon, bright daylight. As we were coming south from the time we left St. Louis Avenue, until the accident occurred, the engine was traveling about thirty-five to forty miles an hour. I saw the truck start to cross the track going east. When I first saw the truck it was just about to approach the west rail or first track; the wheels were almost on the west rail of the west track. There is a lumber shed at the corner of Main and Tyler streets which obstructs the view. That was located on the northwest corner. It was about four or five feet from the west rail of the west track, and there is about five or six feet between the Burlington tracks, that is, from rail center to rail center there is five or six feet. The railroad is standard gauge. The engine overhung the rails on both sides eighteen or twenty inches.

''Q. Was there any bell or any other warning sounded as the train approached this crossing? A. I think I sounded myself is all. I said: 'Oh, Jesus!' and jumped.

''Q. And that is the only thing you heard? A. Yes, sir. That is the only thing I heard. After the truck was struck the engine continued to go with it, I should judge about one hundred and ten or one hundred and thirty feet, I don't know exactly; I stepped it off.''

He further said: ''From the first time I saw the foremost or eastern portion of the truck until the collision occurred, the truck moved eastwardly eighteen or twenty feet and during that time the engine moved seventy-five or eighty feet. The truck was eighteen or twenty feet from the spot where it was struck when I first saw it. It was either right on the west rail or aw-

fully close to it when I first saw it; that is, the rail of the opposite track.''

Kulongoski testified: ''The truck was a Dorris, which has four speeds forward and one reverse. When we left Brecht Company we were going ten or twelve miles an hour. At Broadway we changed the speed to seven or eight miles an hour, shifted to third speed. Ten or twelve miles an hour is high speed. I came down to third speed. I changed my levers and was going four or five miles an hour. I did not shift my levers. I continued on third speed until struck. I proceeded down this grade down Tyler Street, from Broadway; from Second to Main Street, it was slanting down. I was running down hill. It is a down-hill grade there. When I approached the tracks I saw that the gates were up on both sides and continued out on to the tracks. I looked to the south. I did not look north until Cooney hollered and at that time I was at the east or second rail of the first track. I looked south because I got a better view looking south than north. I always look for trains or anything to see if a train or engine was coming. I could not look north. I only looked to the south and saw no train coming.

''The front wheels of the truck are about four or five feet in front of my seat. The hood extends about one foot in front of the wheels. There is an extension of about six feet. It is about five or six feet from me to the front end of the truck.

''When the front wheels of the truck arrived at the second rail of the first track Cooney hollered, 'Oh, my God, John.' I was then going about four or five miles an hour. There is a slight rise before the first west track. The bottom of that is about five or six feet from the first rail. I came down four or five miles an hour, five or six feet back of the first rail. Going four or five miles an hour at that place on that day and that time I could have stopped in five or six feet.

''From the time I started from Second Street, until the engine struck the truck, Cooney said nothing to me

but 'Oh, my God, John.' He was sitting on the front seat of the truck alongside of me on my right. I got Cooney to look at Second Street. I told him to look north. I just told him to look because there are no gates at Second Street. There is only a watchman and a shanty and I wanted him to look north for an engine or train and he said nothing to me from that time until he exclaimed, 'Oh, my God, John.' . . .

"The entire length of the truck and trailer together is about twenty or twenty-two feet. I was not thrown out of the truck nor was Cooney. He jumped out, and the right side and the bed of the trailer struck him. I remained in my seat; when I saw the engine I tried to steer out of its way, turning south. When struck I was over the first rail of the second track. The front wheels had reached the second rail of the second track when we were hit. The cab in which I was sitting was not inclosed, and there was nothing between me that would interrupt my vision to the north. I could see by turning my head to the north. There was nothing between Cooney and the north. He could see, too. I think Cooney was looking north, because he was the one that told me. I do not know when he looked north. I think he was looking north. When I turned around he was looking north, but until that time I had not seen him looking north. Until he exclaimed, 'Oh, my God, John' I don't think I seen in which direction he looked."

He also testified he thought the engine was running thirty to thirty-five miles an hour, but that he was not a judge of speed.

Barnes, the fireman, a witness for defendants, testified on direct examination: "The first signal or notice that there was anything wrong was when I saw the truck coming from behind the building, the shed at the northwest corner of Tyler and the tracks. I saw the truck come out from behind the shed. I was then ten or fifteen feet from the north line of that shed, when I saw it. When I saw the truck I hollered to the engineer to stop. I said, 'Whoa! Stop!' He applied the brakes, and re-

versed the engine. There are no other appliances on the engine to stop it besides reversing and applying the brakes. That is the usual equipment for stopping engines. We had air brakes. There is nothing else on engines except air brakes and reversing.''

On his cross-examination, he testified as follows:

''I was looking straight ahead south on the west, saw the building. I looked as far as I could see. The building obstructed my view until I got very near the crossing. I could see west on Tyler Street, when you are back about eight or ten feet, and that is when I hollered. The front end of the truck at that time was coming over the other side of the track, the west track. It was over on the other side ready to go over on the other side of the west track. I could not see how far the front end of the truck was west of the west rail of the west track when I first saw it. It was going pretty fast. The front end of that truck was seven or eight feet west of the west rail when I first saw it. I saw seven or eight feet away from the building. The building is about six or seven feet north of the curb. The truck was somewhere near the middle of the street. My engine was about fifteen feet away from the line on which the truck was driving when I first saw it, about fifteen feet away from the line the truck was going on when I first saw it, and I could not see it sooner than that.

''Q. So that the front end of your engine only had to move fifteen feet further south to hit this truck? A. It would be the width of the street.

''Q. If the front end of your engine was fifteen feet away from it when you first saw it and it hit it, it only had to move fifteen feet to hit it, didn't it? A. Yes, sir.

''Q. And during that time, how many feet did the truck move? A. Well, it moved to where I saw it.

''Q. From where you saw it to where? A. The front wheels were across the second track rail.

''Q. How many feet would you say the truck moved from when you first saw it until hit? A. Across the two tracks.

"Q. As a matter of fact, the truck moved farther than the engine did, didn't it? A. I guess it did. The truck was west of the west rail, and it moved something like thirty feet from the time I saw it until I got hit.

"Q. And during that time your engine moved fifteen feet? That is right, isn't it? A. Well, it moved the length I saw it.

"Q. Well, you said the front end of your engine was fifteen feet from the line the truck was on; and that is the distance that it moved until it hit the truck? A. I said from the street.

"Q. Didn't you say when I asked you the question how far was the front end of that engine back, didn't you say fifteen feet?

"MR. ROBERT: I object to that question, as he said fifteen feet from the line of the shed.

"MR. EAGLETON: He said on cross-examination fifteen feet from the truck three times.

"THE COURT: I understood him to say that it was fifteen feet from the line of the truck, but I may be mistaken about it.

"THE WITNESS: I meant the line of the street where I first saw it."

Wittrock in his testimony said: "I cannot say how close to Tyler Street the engine would have to be before you can see any distance up Tyler Street. The building on the northwest corner is located close to the nearest track and obstructs the view of Tyler Street. You cannot see a vehicle until it actually gets on the rails of the first track. In operating an engine along there I depend solely and wholly on the crossing gates being down, as a rule. If it is down it prohibits vehicles from coming through, and if it is up it doesn't."

These defendants introduced the testimony of a civil engineer, who a few days before the trial took observations from various points in Tyler Street, of the distance at which an engine could be seen to the northward on the track in question. The points of observation were on an east-and-west line ten feet north of the south curb of

Tyler Street. His testimony, using a plat he had made, was that standing on this line, at a point thirty feet back from the west rail of the east track he could see the engine when it was at a point eighty-six feet away; that is, eighty-six feet from the point of observation. The distance of the engine in its course southward to an intersection with the east-and-west line on which the witness stood, was necessarily less than eighty-six feet. Similarly; he said that standing at twenty-five feet back from the west rail of the east track the engine could be seen when it was on that track and distant one hundred two feet from the point of observation; at twenty feet back he could see it one hundred twenty-five feet, and at fifteen feet back one hundred eighty-five feet.

Counsel have cited many cases in which it has been held that the party injured or person killed was held to have been guilty of contributory negligence as a matter of law. [State ex rel. Hines v. Bland, 237 S. W. 1018; Burge v. Railroad, 244 Mo. 76; Laun v. Railroad, 216 Mo. 563; Stotler v. Railroad, 204 Mo. 619; Schmidt v. Railroad, 191 Mo. 215; Huggart v. Railroad, 134 Mo. 673; Hixson v. Railroad, 80 Mo. 335.] Many of these are cases in which the train could have been seen at a considerable distance. The conclusion to be reached depends upon the facts of the particular case. In this case what might be Cooney's version of the care exercised by him or by others is not available. It is shown, however, that although he was not operating the truck, nor controlling its operation, he was the first of those riding upon it, to notice the approach of the engine, and to give any warning. His exclamation was given, Kulongoski says, when the front wheels of the truck arrived at the second rail of the west track. This second or east rail of the first track was distant seven feet, according to the civil engineer, from the west rail of the east track. Kulongoski says the truck was then going four or five miles an hour, and that, ''going four or five miles an hour at that place on that day and that time I could have stopped in five or six feet.'' But he turned the truck

southward, and the engine struck the truck at the driver's seat, or five or six feet from the front end of the truck.

In his direct examination upon that situation Kulongoski had said that when he first saw the engine it was about thirty or forty feet from the shed, and he testified: "I tried to steer south to get out of the way." He did this in a situation wherein there was no time for deliberation.

In determining the question of. contributory negligence in this case we are unable to escape the conclusion that the fact the gates were up when the truck approached the crossing, and were seen to be up by Kulongoski, and doubtless by Cooney, is a circumstance which cannot be ignored, although defendant Burlington Company did not maintain, nor operate the gates.

"An inflexible rule cannot be laid down as to what constitutes contributory negligence on the part of the person injured at a railroad crossing, but each case depends upon its own circumstances, the amount of care required being in proportion to the degree. of danger at the particular crossing, and greater care or diligence being required accordingly as the peculiar locality and the circumstances of the case seem to require greater caution, although in any case such care only is required as under the circumstances is ordinary care." [33 Cyc. p. 982.] The testimony is that these gates had been maintained and operated for thirteen years. Kulongoski had been crossing with the same truck two or three times a week for four years. Cooney had been employed by Brecht Company for two years. Under these circumstances to hold that an ordinarily prudent person or a very prudent person would be in nowise affected by the fact that the gates were open, would be contrary to reason. Upon this particular issue, the contributory negligence of deceased, a like conclusion seems to have been reached by the St. Louis Court of Appeals in Cuccio v. Terminal Railroad Association and Wabash Ry., 199 Mo. App. 365, 378. Taking all the circumstances of this case

into consideration we hold that the question of contributory negligence was properly left to the jury.

III.   Instruction 2 is assailed on the ground that it purported to cover the whole case, on primary negligence, and ignored the question of negligence of Cooney and of the driver of the truck.

*Instruction: Omitting Defense.*   This instruction required the jury to find negligence of the Burlington Company and of Wittrock in driving the engine at a rate of speed unreasonable and dangerous under the circumstances and conditions there, and to find that the collision and fatal injury to Cooney resulted directly and proximately from such negligence.

In support of their contention that the instruction was erroneous on the ground that it ignored the negligence of the driver and of the deceased, counsel cite Jacquith v. Plumb, 254 S. W. 89, wherein it was said, at page 93: ''The instruction purported to cover the whole case and directed a verdict for the plaintiff without requiring the jury to pass upon the plea of contributory negligence. This error was not cured by giving another instruction submitting that issue to the jury.'' In support of that holding Judge Higbee cited Hall v. Manufacturers Coal & Coke Co., 260 Mo. 351, and State ex rel. Long v. Ellison, 272 Mo. 571.

In Hall's case a fundamental part of the plaintiff's charge was that the defendant had negligently assured plaintiff that the roof of the mining room was safe. The plaintiff's instruction purporting to cover the case failed to require a finding that there was such negligent assurance. There, the element omitted was an essential part of the plaintiff's case. In State ex rel. Long, the instruction under consideration was one intended to cover the whole case, and it was pointed out in the opinion by Judge Graves that it did not submit the question of negligence or no negligence of the defendant in an essential particular. It was held that the plaintiff's instruction thus authorizing a verdict for him ''without

any finding for plaintiff on a vital question," the requirement of defendant's instruction of a finding upon that question before the plaintiff could recover, did not cure the omission in plaintiff's instruction, but produced conflict in the instructions. That is not the situation in the case at bar. Here the plaintiff's instruction required the finding of negligence of excessive speed, and also the finding that such negligence directly and proximately caused the injury. This presented the hypothesis upon which plaintiff was entitled to recover upon the theory of excessive speed of the engine. The court gave for defendants Instruction 5, presenting the hypothesis of the contributory negligence of Cooney in failing to exercise ordinary care in looking or seeing the approach of the engine in time to inform the driver of the truck. The court gave Instruction 6 for defendant which told the jury that the fact the crossing gates were not lowered did not absolve Cooney and the others from the duty to exercise ordinary care to avoid a collision; and also gave instructions numbered 8 and 9, upon the theory that Kulongoski and Cooney were co-employees of the Brecht Company, engaged together in transporting freight of that company, and that if Kulongoski, the driver of the truck, failed to exercise ordinary care, the plaintiff could not recover; and followed those up by giving Instruction 11 defining the care required of Cooney as a person riding in an automobile, driven by another and approaching a railroad track. These instructions did not conflict with plaintiff's Instruction No. 2. These instructions, hypothesized in various ways the facts constituting the defense to the facts hypothesized in that instruction, and taken with it, covered the law upon that feature of the case.

The early case of Clark v. Hammerle, 27 Mo. 55, and others later, including State ex rel. Long, supra, are reviewed in State ex rel. Jenkins v. Trimble, 291 Mo. 227, and the question is pointedly answered in the opinion in Heigold v. United Rys. Co., 271 S. W. 773. We hold that plaintiff's Instruction 2, followed by defend-

ants' said instructions completely presented the issue arising upon the alleged primary negligence of the defendants, and the contributory negligence of the occupants of the truck.

IV. Another objection made to plaintiff's Instruction 2 is that the jury were authorized to find excessive, unreasonable and dangerous speed "under the circumstances and conditions there."

Gates.

It is urged that this included the fact that the gates were up, a condition for which these defendants were not responsible. The court gave defendant's Instruction No. 4, which relieved them of that responsibility. But, Wittrock testified: "In operating an engine along there I depend solely and wholly on the crossing gates being down as a rule." Yet, also he testified: "I would not swear whether the gate was up or down, I do not know. I was watching the track, I was watching straight ahead to the south. I never looked particularly to see that the gate was down." He further testified: "The building on the northwest corner is located close to the nearest track and obstructs the view of Tyler Street. You cannot see a vehicle until it actually gets on the rails of the first track." The evidence also was that the engine was moving southward on a north-bound track. In the light of this testimony the foregoing objection is without weight.

V. A further objection made is that the instruction authorized a verdict against both defendants, but, that Section 4218, Revised Statutes 1919, does not authorize a joint judgment, but provides that either the company operating at the time "or" the employee causing the death shall forfeit, etc. The objection is without merit. Section 4218 preserves the right of action, although death results to the person injured, in cases where the injured party, if alive would have had a right of action. The cause of action here is upon Section 4217, and by the closing provision

Liability of Servant.

Rawie v. C. B. & Q. Railroad Co.

of that section the person having the right of action for
the death of another, through the negligence of any
servant, may, at his option, bring suit thereon jointly
against the master and servant, or severally against
either master or servant.

VI.   It is urged that the court erred in modifying
defendant's Instruction 10. This instruction as offered,
in its subject, though not by express reference, related
to plaintiff's Instruction 1, upon the humanitarian rule,
Discovering    but as offered it was too broad and peremp-
Peril.         tory.  As offered it. told the jury that before
               they could find for plaintiff, and against these
defendants, they must find that after the servants of the
Burlington Company actually saw the occupants of the
truck in imminent peril of being struck, or actually saw
that said occupants were unable to extricate themselves
from said peril, the defendants, by the exercise of or-
dinary care and with the means at hand, could have
stopped said engine in time.  As modified and given by
the court it told the jury that before they could find for
plaintiff and against defendants under Instruction 1 they
would have to find defendants actually saw, or ''by the
exercise of ordinary care'' could have seen the peril of
the occupants of the truck and their inability to extricate
themselves therefrom.

The objection made is that there was no evidence
that the servants of defendant by the exercise of or-
dinary care could have discovered that deceased and
others were unable to extricate themselves from any
perilous position.  There was ample evidence in the tes-
timony on behalf of defendants themselves to justify the
modification made by the court.  This is plain from the
evidence of defendants as to the speed of the engine as
it approached the crossing, and the evidence of the civil
engineer introduced by defendants, with the plat made by
the engineer and put into the record, showing the dis-
tances at which the engine could be seen from points in
Tyler Street, or, conversely, objects in Tyler Street could

be seen from the engine. Beyond that, the finding, as has been said, was not against defendants under the humanitarian doctrine.

VII. Defendants complain because the court refused to give Instruction G offered by them. This instruction would have told the jury that there was no evidence that the Burlington Company or its servants negligently failed to exercise ordinary care to keep a lookout for persons on vehicles on the crossing. The instruction was properly refused.

**Dangerous Crossing.**

VIII. Complaint is made of the refusal of the court to give defendant's Instruction F, which would have told the jury that if they found for plaintiff, in no event could their verdict be for more than $2,000. It is said there was no evidence of "damage" to the heirs of deceased, and McDaniel v. Hines, 292 Mo. 401, is cited. The evidence is that Cooney was a widower, and left two daughters, both of whom were married; that he lived with the younger daughter, paid the rent on the house in which they lived, and in addition gave her ten dollars a month. But, it is not necessary to go farther upon this point than to refer to the statute itself, and to Grier v. Railway Co., 286 Mo. 523. In that case the plaintiff's intestate "was unmarried and with no dependent relatives." A verdict for $10,000 was sustained, by court in banc.

**Amount of Damages.**

IX. Complaint is made of the form of the verdict, by which the jury assessed "plaintiff's damages" at ten thousand dollars. It is said the jury could not do this, and it was error to receive such a verdict. Treadway v. United Rys. Co., 253 S. W. 1037, and Grier v. Railway, 286 Mo. 523, are cited. Under the court's instruction the jury were told that if the verdict was for plaintiff, it should be "for an amount not more than ten thousand dollars and not less than two thousand dollars." The defendants asked no instruc-

**Form of Verdict.**

tion upon the measure of the sum to be allowed by the verdict. In McDaniel v. Davis, 266 S. W. 710, the like question arose upon an instruction of the court which told the jury that if they found for plaintiff "they will assess the damages at not less than $2,000 nor more than $10,000 at the discretion of the jury." It was held in that case that the use in the instruction of the word "damages" instead of the word "penalty" was not reversible error. In this case there is no complaint of the instruction. The instruction fixed the limits of the sum for which a verdict might be returned. The mere fact that the sum fixed by the jury was by them called damages instead of penalty did not infect the verdict with a fatal infirmity.

X. These defendants also urge that the court erred in allowing plaintiff's attorney to argue to the jury that it could consider the fact that the gates were open,

**Argument to Jury: Gates.** when neither of the defendants was responsible for the fact that the gates were open. We have carefully read the statements of counsel for plaintiff, and of the trial court upon the objection made at the time. We agree with the trial court in the view that counsel for plaintiff was not arguing that these defendants were liable for the failure to lower the gates, and we find no reversible error under this assignment.

XI. Questions are raised by plaintiff upon her appeal from the action of the court in sustaining the demurrer of Barnes, the fireman, and the demurrer of the

**Other Defendants.** Terminal Company and of Schwartz remain. The demurrer of Barnes was sustained at the close of plaintiff's case. The only evidence given as to Barnes in the plaintiff's case was in the testimony of Beal, and was the statement that Barnes was the fireman of the engine, and that he (Beal) gave no signal to the fireman before he jumped. Upon the state

of the testimony the court did not err in sustaining the demurrer of Barnes.

XII.   The demurrer as to the Terminal Company and Schwartz was sustained at the close of the whole case.   Under this assignment counsel for plaintiff cite Cuccio v. Terminal Railroad Association and Wabash Ry., 199 Mo. App. 365.   In that case the engine which inflicted the injury was operated by the Terminal Company, but upon tracks of the Wabash Railway, and across the street-car tracks of the United Railways Company.   At the intersection of the Wabash tracks with the street-car tracks, the Wabash Company maintained a watch tower and gates operated from the tower.   On the occasion in question the gates were left open and no signal was given from the tower.   In that case the Wabash Company had undertaken to operate the gates in respect of traffic over its own tracks—the tracks whereon the injury occurred.   There was negligence in that regard on the part of the Wabash Company, and other negligence on the part of the Terminal Association under which it also was held liable.

The case is not an authority upon the question of the liability of the Terminal Company in this case.   The action of the trial court upon this branch of the case has support in the ruling in Barney, by next friend, v. Hannibal & St. J. Railroad Co., 126 Mo. 372.

We conclude that the judgment herein should be affirmed.   *Seddon, C.,* concurs.

PER CURIAM:—The foregoing opinion of LINDSAY, C., is adopted as the opinion of the court.   All of the judges concur; *Ragland, P. J.,* in the affirmance as to the C. B. & Q. Railway Company, and in all of the opinion except Paragraph XII; *Woodson, J.,* in all except Paragraph III.

## ON MOTION TO TRANSFER TO COURT IN BANC.

PER CURIAM:—The fact that both sides are appellants in this case (the plaintiff, who appealed as to the adverse decision against him and in favor of St. Louis Merchants Bridge Terminal Railway Company, and Frank Barnes and Alfred Schwartz, individual defendants, and defendants, Chicago, Burlington & Quincy Railroad Company and William F. Wittrock, who appealed from a judgment against them and in favor of plaintiff) has occasioned some misunderstanding. This case is the appeal of the defendants C. B. & Q. Railroad Company and Wittrock, and is our Number 25023. The plaintiff's appeal is our Number 25450, and is on our docket for the January Call of the October docket. In the Assignment of Errors in this case, the appellants charge no error upon the part of the trial court in taking the case from the jury as to the three other defendants. [See brief of C. B. & Q. Railroad Co., and Wittrock, p. 10.] Of this the plaintiff complains, but his appeal is yet pending on our docket, as above stated. Paragraph 12 of our opinion, as filed, had no place in this case, under the circumstances. Our original opinion indicates that all four members of the court at least concurred in the result, which was the affirmance of the judgment as to the C. B. & Q. Railroad Company and Wittrock. WOODSON, J., upon whose alleged dissent, the motion to transfer is based, understood that he concurred in the result of the opinion and in all the opinion, except the discussion in Paragraph Three of the opinion, as to Instruction 2. In some of that language he did not concur, but he did concur in all other portions of the opinion, pertinent to this case, and in the result reached by the opinion. A re-examination of the record shows that the Terminal Railway Company, and the individual defendants, Barnes and Schwartz, are not involved in this case, so that Paragraph 12 of the original opinion is superfluous.

Our original opinion showed no dissent as to the result of the opinion, which was the affirmance of the judgment against the C. B. & Q. Railway Company and Wittrock. The motion to transfer is overruled. In this *Per Curiam* all concur.